CENTRAL TRUST CO. OF NEW YORK v. WESTERN N. C. R. CO. et al.

(Circuit Court, W. D. North Carolina. July 5, 1898.)

1. JUDGMENTS—FINALITY.
A decree of foreclosure was rendered, a sale ordered and confirmed, and the purchaser was by formal order made a party to the suit, and held obligated to pay its bid, etc. *Held,* that, while the decree was final, it did not determine the cause, so as to prevent the purchaser from filing a supplemental bill for an injunction restraining others from bringing suit in a state court attacking the validity of the decree.

2. EQUITY—SUPPLEMENTAL BILL.
A supplemental bill by the purchaser is a proper proceeding to obtain a restraining order, where stockholders are attempting by proceedings in a state court to nullify a decree of the circuit court foreclosing a mortgage on corporate property.

3. SAME—CONCLUSIVENESS OF ADJUDICATION.
A decree of foreclosure of a mortgage on a railroad company's property is conclusive upon the creditors and stockholders of the company.

4. INJUNCTION—POWER OF FEDERAL COURT.
A federal court which has obtained jurisdiction may enjoin a party from prosecuting in a state court an action that will annul its judgment, notwithstanding Rev. St. § 720, prohibiting enjoining proceedings of state courts.

5. CORPORATIONS—FRANCHISES.
Under Code N. C. §§ 671, 673–675, a corporation can sell, mortgage, or transfer all its property and franchises, except its franchise of existence.

6. CORPORATIONS—ACTS ULTRA VIRES.
That the purchaser of a North Carolina railroad at foreclosure sale is a Virginia corporation is not an objection that any private person can urge against the purchaser's possession of the property.

Charles Price and George F. Bason, for complainant.
A. C. Avery, Overman & Overman, and B. F. Long, for defendants.

SIMONTON, Circuit Judge. This is a motion for an injunction. In order to understand the questions involved in it, a statement of facts is necessary: The Western North Carolina Railroad Company was incorporated under the laws of the state of North Carolina. Its road ran from Salisbury to Asheville, and thence it had two branches, —one known as the "Murphy Branch," to Murphy, N. C.; the other from Asheville to Paint Rock, N. C. On the 2d September, 1884, this corporation executed two bonds to the Central Trust Company of New York,—one in the sum of $3,000,000, and the other in the sum of $1,020,000,—each payable on 1st July, 1914, in gold coin; interest thereon payable in like coin on the 1st days of January and July in each year, at the rate of 6 per cent. per annum. On the same day, to secure the said bonds, the railroad company executed to the said Central Trust Company its mortgage or deed of trust, whereby it

conveyed to the said Central Trust Company its entire railroad, and all real estate then owned or to be thereafter acquired for the purposes thereof, and all property of every description, including rolling stock, and also all the franchises, rights, privileges, easements, income, earnings, and profits of said railroad company, subject, nevertheless, to a certain indenture of mortgage or deed of trust made and executed by said railroad company to the said Central Trust Company September 1, 1884, to secure the payment of certain consolidated first mortgage bonds of said railroad company at the rate of $12,500 per mile. This mortgage was duly recorded. After the execution of this last-named mortgage, the Western North Carolina executed a lease of its entire property covered by these mortgages to the Richmond & Danville Railroad Company, which lease was, with other property of said Richmond & Danville Railroad Company, put into the hands of receivers of said company. No default was made upon the first mortgage. But the Western North Carolina Railroad Company having made default on the interest of its second mortgage from 1st January, 1885, and onward, the Central Trust Company of New York filed its bill in the circuit court of the United States for the Western district of North Carolina, praying foreclosure of this second mortgage. To this bill the Western North Carolina Railroad Company and its lessees, the receivers of the Richmond & Danville Railroad Company, were duly made parties, were served and answered. In its bill the Central Trust Company set up its mortgage, and averred in distinct terms that its said mortgage or deed of trust was authorized, made, executed, and delivered, in all respects, in conformity with law. The cause, being at issue, was heard, and thereupon a decree was entered in the said court, and foreclosure and sale were ordered. The latter was had, in all respects, in conformity with the order; and at the sale the Southern Railway Company, a corporation of the state of Virginia, became the purchaser. Upon the report of sale, it was confirmed, and by a formal order of the court the purchaser was made a party to the cause. Under the order of the court a conveyance was made to said purchaser of all the property and rights of property mentioned in the mortgage, subject, however, to the lien of the first mortgage. The purchaser went into the possession of the property under this deed, and has been and is operating said railroad, and is in receipt of the tolls, income, and profits thereof. This being so, at the May term, 1898, of the circuit court for Rowan county, in the state of North Carolina, S. T. Pearson, who claims to be a stockholder in the Western North Carolina Railroad Company, and Clemye James, administratrix, a creditor of the Western North Carolina Railroad Company, filed their complaint, in behalf of themselves and all other stockholders and creditors of the said Western North Carolina Railroad Company, in which, after giving a history of the said company, it is averred and charged that the mortgage alleged to have been executed by the said Western North Carolina Railroad Company on 1st September, 1884, was utterly invalid and void, that the directors and stockholders who pretended to have acted for said railroad company were wholly without authority to do so, and that the mortgage alleged to have been executed on 2d September, 1884, was for the

same reasons utterly invalid, null, and void, and that the sale under foreclosure, the purchase thereat, the conveyance to the Southern Railway Company, and its claim of ownership were and are all null and void, and that the Western North Carolina Railroad is derelict in permitting the Southern Railway Company to operate and use its road. The bill then charges that several other purchases of railroads in North Carolina made by the Southern Railway Company are null and void, and that this last-named company is insolvent in consequence. It prays the appointment of a receiver. Upon the filing of this bill the Central Trust Company, the mortgagee under both mortgages of the North Carolina Railroad Company and the Southern Railway Company, purchasers under the sale and foreclosing of the second mortgage, file this their bill, praying that the parties named as complainants in the state court be enjoined from proceeding any further therein. And the first question made is as to the jurisdiction of this court to hear this bill at this time, and in this mode.

The first objection is that the case of the Central Trust Company against the Western North Carolina Railroad has ended, and is no longer alive, so that this court cannot pass any order therein. It is said that the decree confirming the sale is a final decree, which ends the case. An inspection of the decree itself militates against this view. "And the court," says the order, "accepts the Southern Railway Company as the purchaser of, all and singular, the railroad property and franchises sold under the decree in this cause, and holds it obligated as such purchaser to complete and fully to pay its said bid, and to comply with all the orders of this court heretofore entered, or hereafter from time to time to be entered, by it, obligatory on such purchaser." And so the decree in many other places distinctly declares the cause and the purchaser under its jurisdiction open to the entry and enforcement of such orders as may from time to time become necessary. If the purchaser, under the clauses quoted, is held bound to the court to obey its orders, surely the purchaser has a corresponding right to call upon the court for its aid against what has been done in opposition to its orders. One of the obligations of the purchaser is to hold subject to the first mortgage; and in argument it has been claimed that the purchaser has, as between itself and the North Carolina Railroad Company, become the principal, as far as the debt under this mortgage is concerned, and the North Carolina Railroad Company a surety. The Central Trust Company, the first mortgagee, is a party to that suit. So long as the first mortgage remains open and unsatisfied, the cause cannot be said to have ended. Under this decree the purchaser was made liable for all claims against the Western North Carolina Railroad Company, or the receivers, existing at the date of the sale, and affecting the corpus of the property sold. These claims required investigation, examination, and proof; and, so long as any of them remained or remains unsettled, the case was and is open.

It is urged, with a wealth of authority, that the decree in this case affirming the sale was "a final decree." These words, "a final decree," are technical. They determine when an appeal to a higher court will lie. No case should go up by piecemeal. No case can

go up unless the affirmance by the appellate court would terminate the litigation between the parties on the merits of the case. Bostwick v. Brinkerhoff, 106 U. S. 3, 1 Sup. Ct. 15. So in this case, in this sense, the decree, as between the parties, was final. It terminated the litigation, as between the parties, on the merits of the case. It established the fact of the mortgage; of the debt secured thereby; that the mortgage "was authorized, made, executed, and delivered in all respects in conformity with law," and was duly recorded; and that the right to foreclosure was fixed. On these issues there can be no further litigation between the parties and their privies. But, as has been seen, this could not end the cause, nor permit the parties to go without day. A multitude of questions yet would come up for adjudication, aside, of, beyond, and not included in, the merits of the case. The books are full of instances of this character. A decree of foreclosure, though final in one sense, as determining the respective rights of the parties to the property in question, is still in its nature interlocutory, and is open to review by the court. Nougué v. Clapp, 101 U. S. 551. The point is illustrated in Iron Co. v. Meeker, 109 U. S. 181, 3 Sup. Ct. 113:

"When a decree decides the right to and possession of property in contest, and the party entitled to have it carried immediately into execution, it is a final decree, although the court below retains possession of so much of the decree as may be necessary for adjusting accounts between the parties."

The case of Ray v. Law, 3 Cranch, 179, only decides that a decree of foreclosure of a mortgage is so far final that it can be appealed from. And this was the same result in Whiting v. Bank, 13 Pet. 9, although clearly there was much for the court below to do. Another illustration is found in the language of the supreme court in Re Farmers' Loan & Trust Co., 129 U. S. 213, 9 Sup. Ct. 266; Mr. Justice Miller speaking for the court:

"The doctrine that after a decree which disposes of a principal subject of litigation, and settles the rights of the parties in regard to that matter, there may subsequently arise important matters requiring the judicial action of the court in relation to the same property and some of the same rights litigated in the main suit, making necessary substantive and important orders and decrees, in which the most material rights of the parties may be passed upon, and which, when they partake of the nature of final decisions of those rights, may be appealed from, is well established by decisions of this court."

In Nougué v. Clapp, 101 U. S. 551, there had been a decree for foreclosure in a state court. A bill was filed in the United States circuit court by a stockholder in the debtor corporation, upon the ground that the decree was obtained by fraud. The language of the opinion, mutatis mutandis, is curiously applicable to this case:

"A circuit court of the United States cannot revise or set aside a final decree rendered by a state court, which had complete jurisdiction of the parties and subject-matter, upon the ground that the decree was obtained by fraud, where the injured party has had an opportunity to apply to the state court to reverse the decree. The plaintiff is a party to the foreclosure suit, as a shareholder in the old corporation. The state court is still open to listen to the complaint of the corporation and its shareholders. The decree of foreclosure, though final in one sense, as determining the respective rights of the parties to the property in question, is still, in its nature, interlocutory, and is open to review by the court, upon petition or motion in the cause, or by

bill of review for good cause shown. Story, Eq. Pl. § 421, and note; Evans v. Bacon, 99 Mass. 213; Pub. St. Mass. c. 151, § 12. The plaintiff has therefore an ample and complete remedy for all his alleged grievances in the state court, and there is no occasion for his application to this court for relief by bill in equity. The decree of foreclosure, therefore, now in full force and unrevoked, is a bar to this suit."

These views, so well expressed, are conclusive of this branch of the case, and require nothing more to be said. This case is still within the control of this court.

The complainant has brought these questions up by supplemental bill. "This may be done [i. e. use of a supplemental bill] as well after as before a decree, and the bill may be in aid of the decree, that it be carried fully into execution. * * *" Mitf. Eq. Pl. pp. 75, 76, par. 62.

This whole subject is discussed in the case of Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, on a similar objection made before the court to a bill filed to carry into effect its own decree. This decree had been rendered and filed. It related to the title to land. Subsequently an assignee of the prevailing party brought his bill in the United States circuit court, alleging that his rights under the decree were disregarded and denied. It was held to be ancillary to the original proceedings, and supplementary to the decree rendered therein. The right of the court to carry into effect its own orders and decrees is asserted and maintained. In the course of the opinion the learned justice adopts the language of a case quoted:

"The title held by the mortgagor passes under the decree to the purchaser upon the consummation of the sale by the master's or sheriff's deed. As against all parties to the suit, the title is gone; and as the right to the possession, as against them, follows the title, it would be a useless and vexatious course to require the purchaser to obtain such possession by another suit. Such is not the course of procedure adopted by a court of equity."

But the jurisdiction does not depend alone on the supplemental bill. If it be treated as an original bill, it is ancillary in its character, growing out of, dependent upon, and in aid of the original bill. See Clarke v. Mathewson, 12 Pet. 120; Fost. Fed. Prac. 28, 29. This question will be discussed in connection with the other objection, that the bill seeks to enjoin proceedings in a state court. The original bill was filed against parties among whom was the Western North Carolina Railroad, a corporation. The issues in the case were the existence of the mortgage, the validity of the mortgage, the debt due under the mortgage, and the right to a foreclosure and sale. With respect to the mortgage, it was distinctly averred that it was authorized, made, executed, and delivered in all respects in conformity with law. All these issues were decided in favor of the complainant, and were finally and forever adjudicated as between the parties and their privies. The Western North Carolina represented each and every of its stockholders. They were not necessary or proper parties to the suit. The corporation fully represented each of them. Railroad Co. v. Howard, 7 Wall. 392. If there existed any reason why it did not or could not represent the stockholders, or any of them, on proper showing any stockholder could have been permitted to intervene and protect his interest. Nothing

of this kind was done. Indeed, up to the recent proceedings in Rowan county no word of complaint had been heard during the suit in this court, while the advertisement of the sale was progressing, after the sale was made, when the Southern Railway went into possession, and during its operation of the road. The decree was entered, and bound the corporation and its stockholders. There can be no question that the circuit court had jurisdiction of the cause. There is no pretense or proof of fraud or collusion between the Central Trust Company, the Western North Carolina Railroad Company, and the purchaser. The judgment of foreclosure is conclusive against the stockholders, both as to the validity and the amount of the claim of the Central Trust Company. Slee v. Bloom, 20 Johns. 669; Hawkins v. Glenn, 131 U. S. 319, 9 Sup. Ct. 739. Notwithstanding this, the suit now complained of was instituted in the state court in behalf of stockholders and creditors, averring that the mortgage to the Central Trust Company by the Western North Carolina Railroad is void, the proceedings and sale thereunder and the order and decree of this court void, and the title made to the purchaser ordered and confirmed by this court void. All this in defiance of the order of injunction issued by this court when it took possession of and administered this mortgaged property, requiring all claimants to litigate in this court. It also seeks in the state court a reversal and annulling of the solemn decrees and orders of this court made in a cause in which these stockholders were privies. It is not to be supposed for a moment that the state court will be so regardless of the comity which does exist and should exist between the courts sitting within the same territory as to sit in judgment upon the validity of a decree of this court, or that it will assume jurisdiction in issues over which this court has for so long a period exercised and held jurisdiction. But this will not protect the parties who have sought in this collateral way to impeach the action and decree of this court. They can be reached by its injunction, because they were brought into, and are within, its jurisdiction. This is the unquestionable right and power of this court. In Dietzsch v. Huidekoper, 103 U. S. 494, this was ruled:

"After the plaintiff removed to a proper court of the United States a suit in replevin brought in a state court, the latter proceeded to try it and render judgment for a retorno habendo. An action having thereupon been brought in a state court against him and his sureties on the replevin bond, they filed their bill in the circuit court of the United States, praying that plaintiff in the action be enjoined from further prosecuting it. The circuit court properly granted the prayer of the bill."

So in French v. Hay, 22 Wall. 250. A case was properly removed from a state court under one of the acts of congress relating to removals into the circuit court of the United States. A complainant, getting a decree in a state court, sent the transcript into another state, and sued the defendant on it there. The circuit court into which the case is removed may enjoin the complainant from proceeding in any such or distant court until it hears the case; and if, after hearing, it annuls the decree of the state court, and dismisses it, as wanting equity, the decree may make the injunction perpetual. The court says:

"This bill is not an original one. It is auxiliary and dependent in its character,—as much so as if it were a bill of review. The court, having jurisdiction in personam, had power to require the defendant to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory. Having the possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be determined in it, until it reached its termination, and the jurisdiction was exhausted. While the jurisdiction lasted, it was exclusive, and could not be trenched upon by any other tribunal. The court below might, upon a cross bill, and perhaps upon motion, have given the relief which was given by the interlocutory and the final decree in the case before us."

So, in President, etc., v. Merritt, 59 Fed. 7, a federal court which has obtained jurisdiction may enjoin a party from prosecuting in a state court a subsequent action which will defeat or impair the same, notwithstanding section 720, Rev. St.

It is said, however, that this matter has been decided by the supreme court of North Carolina, that it involves the construction of a state statute, and that the supreme court has held that the purchase by the Southern Railway Company of the property and franchises of the Western North Carolina Railroad Company is null and void. This court, without question, follows the decisions of the supreme court of North Carolina in the construction of the state statutes in matters of local concern. But unfortunately in the present case it has not the aid of such construction. The case of James v. Railroad Co. (N. C.) 28 S. E. 537, has not the far-reaching effect which is claimed for it. The single question in that case was, does the Western North Carolina Railroad Company still exist as a corporation, and as such owing duties to the state? And that question is decided in the affirmative. This bill, filed by stockholders and creditors, goes further, and seeks to secure a declaration that the proceedings in foreclosure in this court, the sale thereunder, the purchase at such sale, and the deed in pursuance thereof, are null and void, and then seeks to sequester all the property so purchased for the benefit of the stockholders and creditors of the Western North Carolina Railroad Company. The case of James v. Railroad Co. cannot be quoted as authority for these positions. The Southern Railway Company was not a party to the suit, nor could its rights and interests be adjudicated in that case. The court decided the question immediately before it. And, so far as the Western North Carolina Railroad Company and its responsibilities are concerned, this decision is final. Notwithstanding that it has lost all of its property, including its franchise, under which it operated the railroad and received its tolls and fares (Code N. C. § 671), it has not freed itself from its obligations to the state (Id. § 676). But, as to any other matter or thing contained in the opinion of the learned justice who delivered it, all these are obiter,—listened to with all the respect the composition of the court demands, but of authority nowhere. The Western North Carolina Railroad Company was created a corporation by the legislature of that state in the exercise of a sovereign power. This sovereign power made of several persons a single entity, and conferred on them the franchise of acting as one person. This new person, creature of the law, and existing through the grace of and at the will of the sovereign, was then

clothed with certain powers, and granted certain privileges. These are its franchises. First, the franchise of existence as a corporation, —its life and being. This is inseparable from it. When it parts with it,—with this franchise,—it parts with its life. But, with respect to the other franchises with which it has been clothed,—the right and privilege to act as a common carrier, to carry passengers and goods, to charge tolls, to operate a railroad,—these it enjoys as an individual could, and they are not inseparable from its existence. They are its property. A franchise to be a corporation is distinct from a franchise, as a corporation, to maintain and operate a railroad. The latter may be mortgaged without the former, and may pass to the purchaser at the sale. Memphis & L. R. Co. v. Railroad Com'rs, 112 U. S. 610, 5 Sup. Ct. 299. Under the laws of North Carolina, a corporation can sell, transfer, or mortgage its franchises. Code N. C. §§ 671, 673–675. And the franchise, so far as it relates to the receiving of fare or tolls, may be sold with or without the other property of the corporation. Sections 671, 672. When, therefore, the Western North Carolina Railroad Company mortgaged its franchise, with its property of every description, it had a clear right so to do. The mortgagee got a good title, and the purchaser at a sale for foreclosure could become the owner of the franchise, so far as relates to the receiving of fares and tolls. And, when sold, the franchise, as well as all the other property, ceased to belong to the Western North Carolina Railroad Company, and to be responsible for its debts. But it is said that the Southern Railway purchased under the foreclosure of a second mortgage. But it purchased all the right, title, and interest in the property and franchise held by the Western North Carolina Railroad Company. In North Carolina a mortgagee holds the legal title, and the mortgagor has the equity of redemption. In the case at bar the Central Trust Company, under the first mortgage, had the legal title, and under the second mortgage had an assignment of the equity of redemption. When this last was foreclosed, this assignment of the equity of redemption became absolute and fixed, and vested by the sale in the purchaser. Under the decree made in the cause in which the Central Trust Company was a party complainant, the owner of the legal estate, as first mortgagee, and of the equity of redemption, as second mortgagee, the purchaser is said to be the owner of all the property late of the Western North Carolina Railroad Company. This binds the mortgagee, and thenceforward the Southern Railway Company, as to all the rest of the world, was the owner of this property; and, as to the Central Trust Company, it has assumed the payment of the debt due to it.

It has been urged that the purchaser, the Southern Railway Company, is a corporation of the state of Virginia, and can neither purchase nor hold a railroad in North Carolina. With regard to the purchase, the sections of the Code relating to the subject made no discrimination between natural persons and corporations as purchasers of corporate property. Code, §§ 671–675, 697. The word "person" is used, and this means both natural and artificial persons. A corporation is a person, within the meaning of the fourteenth amendment, and is under its protection. Santa Clara Co. v. Southern Pac.

R. Co., 118 U. S. 394, 6 Sup. Ct. 1132.    With regard to the right to hold, this question cannot be made either by Mrs. James or Pearson.

Let an injunction issue against the defendants in this suit, and all others who go in with them in the proceeding complained of, in accordance with the prayer of the bill, to remain of force until the further order of this court.