STATE TRUST CO. v. KANSAS CITY, P. & G. R. CO. et al.

(Circuit Court, W. D. Missouri, W. D.    April 15, 1901.)

No. 2,331.

1. REMOVAL OF CAUSES—TWO DEFENDANTS—PETITION BY ONE.

Where a suit commenced in a Missouri state court by a Missouri corporation against two other corporations of that state on a cause of action not separable as to defendants is removed to the United States circuit court on the petition of one defendant, on the ground that the controversy was separate and involved a federal question, it must be remanded, since one defendant had not the right to have the action removed.[1]

2. COURTS—JURISDICTION—PRIORITY—INJUNCTION.

Where by suit in the United States circuit court a mortgage of a railroad has been foreclosed and the property sold under a decree requiring the purchaser to enter his appearance in such action, such purchaser may by supplemental bill enjoin a suit in a state court by a creditor of such railroad company to recover a pre-existing claim and enforce a lien on such property, and attacking the good faith of the foreclosure proceedings, notwithstanding Rev. St. § 720, prohibiting injunctions to stay proceedings in state courts, since such section extends only to cases in which the jurisdiction of the state court first attached, and not to cases over which the federal court had prior jurisdiction.[2]

In Equity.

In 1899 suit was instituted in this court in the above-entitled cause to foreclose mortgages given by the Kansas City, Pittsburg & Gulf Railroad Company, executed to the complainant as trustee, securing bonds of the company to the extent of about $23,000,000. Receivers were appointed by the court, and the property placed in their hands pending the foreclosure proceedings. On February 5, 1900, a final decree was rendered in the foreclosure proceeding, under which all the property and assets of every kind and description belonging to the Kansas City, Pittsburg & Gulf Railroad Company, upon certain terms and conditions therein mentioned, was decreed to be sold on the 19th day of March, 1900, at which sale the Kansas City Southern Railway Company, a corporation organized for such purpose, became the purchaser; and, having complied with the terms and conditions of such sale, the sale was duly confirmed by order of court on March 20, 1900. Thereupon a deed was duly executed to the purchaser by the receivers; and the railroad and all the property of the Kansas City, Pittsburg & Gulf Railroad Company covered by said mortgages was turned over and delivered to the Kansas City Southern Railway Company, and it took immediate possession thereof, and, pursuant to the provisions of the scheme of reorganization, issued and put upon the market and negotiated its bonds, creating a first and second mortgage lien upon the railroad property. The Guardian Trust Company, a Missouri corporation, was a party defendant to said foreclosure suit, and was one of the trustees for the bondholders of the Kansas City, Pittsburg & Gulf Railroad Company. The provisions of the decree of foreclosure and confirmation aforesaid, in so far as they are pertinent to this controversy, will sufficiently appear in the following opinion of the court. After said foreclosure and sale of said property as aforesaid, said Guardian Trust Company instituted suit in the state circuit court of Jackson county, Mo., against the said Kansas City, Pittsburg & Gulf Railroad Company and the Kansas City Southern Railway Company, claiming to be

[1] Separable controversy as ground for removal, see notes to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Mineral Co., 35 C. C. A. 155.

[2] Restraining proceedings in state courts, see notes to Garner v. Bank, 16 C. C. A. 90; Trust Co. v. Grantham, 27 C. C. A. 575.

the owner and holder of certain obligations of the Kansas City, Pittsburg & Gulf Railroad Company, which it alleges are preferential claims, prior in equity and right to that of the mortgagees under the mortgages foreclosed in the principal suit. The petition in the state court charges, inter alia, that the proceedings had in said foreclosure suit in this court were collusive and fraudulent, in that the stockholders and bondholders of the Kansas City, Pittsburg & Gulf Railroad Company associated themselves together for the purpose of reorganizing the property of that company by means of said foreclosure sale in order to fraudulently cut out the claims of unsecured creditors, while preserving to the bondholders and stockholders their full interest in the property; that the foreclosure proceedings aforesaid in this court, and the appointment of the receivers therein, were in furtherance of said scheme, and the decree of foreclosure was in execution thereof. While not asking to disturb the decree of this court, the petition asked to have its claim established against the property in the hands of the Kansas City Southern Railway Company, and declared to be prior in right to the said mortgages, and for execution against the property so purchased by the Kansas City Southern Railway Company. The Kansas City Southern Railway Company, in response to the summons issued upon said suit in the state court, appeared at the return day thereof, and filed its petition for the removal of the cause into the United States circuit court for this district, on the ground of a separable controversy, and because the controversy involved a federal question. The state court sustained the application for removal. The plaintiff filed a motion in this court to remand the cause to the state court; and pending this motion the Kansas City Southern Railway Company has filed a bill in the nature of a supplemental bill in the principal foreclosure suit of the State Trust Company against the Kansas City, Pittsburg & Gulf Railroad Company et al., reciting said foreclosure proceedings, the appointment of receivers, the decree of foreclosure, sale and confirmation of the property, and the substance of the suit aforesaid instituted in the state court, praying for an injunction from this court enjoining the Guardian Trust Company from the further prosecution of said suit in the state court.

Lathrop Morrow and Fox Moore, for Kansas City Southern Ry. Co.

Trimble & Braley and John A. Eaton, for Guardian Trust Co.

PHILIPS, District Judge (orally). This cause has been submitted to the court on two questions: First, on the motion of the plaintiff to remand the cause to the state court; and, second, in case said motion be sustained, as to the right of the Kansas City Southern Railway Company, on a bill in the nature of a supplemental bill in the original foreclosure proceeding, to enjoin the Guardian Trust Company from the further prosecution of the suit in the state court.

Without entering into a discussion of the first question, it is sufficient for the court to say that as the suit instituted in the state court by the Guardian Trust Company against the Kansas City, Pittsburg & Gulf Railroad Company and the Kansas City Southern Railway Company is an independent suit at law, and both the defendants are Missouri corporations, the right of the defendant the Kansas City Southern Railway Company to remove the whole cause into this court cannot be sustained. The controversy is not separable as to the defendants. An examination of the more recent decisions of the supreme court of the United States is against the right of such removal. The motion to remand, therefore, will be sustained.

The remaining question, then, is whether the Kansas City Southern Railway Company has a right, by a supplemental bill filed in the original foreclosure proceedings in this court, to enjoin the suit instituted by the Guardian Trust Company in the state court. This question is answered by a review of the adjudicated cases and the provisions of the decree of foreclosure and confirmation of sale in the receivership case. In Sharon v. Terry (C. C.) 36 Fed. 337, Mr. Justice Field, on the circuit, delivered an instructive opinion on the question of the right of the court which first obtains jurisdiction of the subject-matter and the parties in a proceeding in equity to retain jurisdiction to the end, to the exclusion of any other court. He said:

"This court, having the power to hear and determine the subject-matter in controversy, and having first obtained possession of the controversy, is fully at liberty to retain it until it shall have disposed of it. The general rule is that, as between courts of concurrent and co-ordinate jurisdiction, the court that first obtains possession of the controversy must be allowed to dispose of it without interference from the co-ordinate court. * * * Where a party is within the jurisdiction of this court, so that on a bill properly filed here this court has jurisdiction of his person, although the subject-matter of the suit may be situated elsewhere, it may, by the ordinary process of injunction and attachment for contempt, compel him to desist from commencing a suit at law, either in this state or any foreign jurisdiction, and, of course, from prosecuting one commenced after the bringing of the suit in this court."

Proceeding then to a discussion of the applicability of section 720 of the United States Revised Statutes, which provides that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of the state, except in cases where such injunction may be authorized by law relating to proceedings in bankruptcy, he observed that:

"Notwithstanding the very general terms of the prohibition, with the single exception mentioned, it has been settled that it does not apply where the federal court has first obtained jurisdiction, or where, the state court having first obtained jurisdiction, the case has been removed to the federal court. In such cases the federal court may restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction. It extends only to cases in which the jurisdiction of the state court has first attached. With its proceedings, then, no federal court can interfere by injunction."

In Fisk v. Railroad Co., 10 Blatchf. 520, Fed. Cas. No. 4,830, the circuit court of the United States for the Southern district of New York issued an injunction restraining that corporation from taking any steps in the state court to procure its own dissolution, and the effect of the statute in question was considered. Judge Blatchford, in deciding the case, said:

"The provision of section 5 of the act of March 2, 1793 (1 Stat. 334), that a writ of injunction shall not be granted to stay proceedings in any court of a state, has never been held to have, and cannot properly be construed to have, any application except to proceedings commenced in a court of a state before the proceedings are commenced in the federal court. Otherwise, after suit brought in a federal court, a party defendant could, by resorting to a suit in a state court, defeat in many ways the effective jurisdiction of person and subject-matter. Moreover, the provision of the act of 1793 must be construed in connection with the provision of section 14 of the act of Sep-

tember 24, 1789 (1 Stat. 81), that the federal courts shall have power to issue all writs which may be necessary for the exercise of their respective juris-dictions. It may properly be considered as necessary for the exercise of the jurisdiction of this court over the corporation in question that it should be restrained from taking steps in a state court to put itself out of existence."

Speaking of the case of Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497, in which an action of replevin had been commenced in the state court of Illinois and removed to the circuit court of the United States, he said:

"An injunction was issued, and the supreme court held that it was properly granted, observing that 'a court of the United States is not prevented from enforcing its own judgments by the statute which forbids it to grant a writ of injunction to stay proceedings in a state court.' It is essential to the due administration of justice in the federal courts that they have full power to issue all process necessary for the exercise of their jurisdiction, and such power is in explicit terms conferred by the statute upon them."

In Jesup v. Railroad Co. (C. C.) 44 Fed. 663, it was held that where a railroad under a receivership is sold, and the purchaser assumes the payment of existing debts and liabilities of the receivership, it was the duty of the court to protect the purchaser against all such demands which are not just and proper against the receiver, and, to that end, to require all such demands to be presented to it for allowance; that where, on the strength of such covenant to the purchaser, a person brings an action in the state court against him to recover for a tort to his realty committed by the receivers, such demand being primarily chargeable on the fund in the hands of the federal court arising from the sale, such court would restrain the prosecution of the action, and require the claimant to present his claim to it, for the reason that a judgment thereon in the state court would entitle him to satisfy it out of any property subject to levy in the hands of the purchaser. The provisions of the decree in that case were, in respect of the question under discussion, much like the provisions of the decree in the foreclosure proceedings herein. In that case it was provided both in the decree and in the order of confirmation that the receivers should deliver certain of the assets, papers, and property to the Wabash Railroad Company, the purchaser, on the condition that the company was to pay and satisfy all debts and liabilities of the receivership remaining unpaid, authorizing the company to defend in that case. The decree in that case did not go to the extent of the decree here, requiring the purchaser to enter his appearance to the principal suit and become a party thereto. The court observed, respecting such provision in the decree, that:

"It is therefore clearly the duty of the court to see that the purchaser is not required to pay or satisfy any claim or judgment of any kind that would not be a proper and just liability of said receivers. If the court had not discharged said receivers upon the conditions recited in the order, releasing them from further responsibility in connection with this property, it would have retained the assets, books, and vouchers in his hands, and adjusted all the liabilities incurred by them as receivers, by and through the proceedings customary in such cases. It is clearly the duty of this court to protect the purchaser of this property to the same extent and in the same manner that it would have protected the receivers if they had been retained for the purpose of settling all these outstanding claims. When the purchaser

bought this property it purchased it upon the conditions named in the decree and order of sale. The purchase price so obtained became a fund in the hands of this court for distribution to the beneficiaries under its decree. The court would certainly protect this fund from being diverted. This agreement to pay such just claims as might be allowed against the receiver is in fact a part of the purchase price paid by said purchaser for the road, and it is the duty of the court to protect it against any unjust claims by the same diligence and care that it would protect the fund if actually in the registry of the court for distribution. The distribution of this fund and the allowance of claims against the receivers, which is in fact a part of the purchase price, is exclusively within the control of this court. As the court would not allow any other tribunal to distribute any part of the purchase price, so it cannot safely or properly allow any other tribunal to say what are proper claims against the receivers to be paid out of this fund, or by the purchaser as a part of its purchase price for the property."

The court then lays down the fundamental proposition that, as such promise and agreement on the part of the purchaser constitute an additional consideration, it is the duty of the court, in good faith to the purchaser, to supervise and determine what claims should be paid and rejected against the property; and therefore it is an indispensable requisite that all the parties who assert claims against the purchaser because of the stipulation and covenant made by the decree or order of the court should establish such claims in the court by the usual proceedings in such class of cases; that, if the claimant were permitted to prosecute his action in the state court, he would have a right to satisfy his judgment out of any property subject to levy in the hands of the purchaser. The court further said (which is an answer to the suggestion made by counsel on the argument of this case) that while counsel "assured the court that they expected, in case they recovered judgment, to come to this court and ask to have it allowed and paid by the purchaser on this covenant, yet there is no legal barrier which would prevent the plaintiff from satisfying such judgment by levy and sale of subsequently acquired property in the hands of the purchaser."

In Fidelity Ins., Trust & Safe-Deposit Co. v. Norfolk & W. R. Co. (C. C.) 88 Fed. 815, the decree of foreclosure provided, as in the case at bar, that the purchaser should be let into possession on delivery of the deed of the master making the sale, and that the purchaser should take the property subject to all liabilities incurred by the receiver, to be determined and enforced by the court ordering the sale. The receiver remaining in possession 60 days after the delivery of the deed, a liability arose during this period for the negligent operation of the road. It was held—First, that the liability was one arising under the receivership, enforceable by the federal court under the terms of the decree; and, second, that where the federal court, by its decree of sale, obtained jurisdiction so far as to determine and enforce against the property sold claims for liabilities incurred by the receivers, it is proper for the court to enjoin the prosecution of an action on such claim in a state court, without violating section 720 of the Revised Statutes, prohibiting courts from granting injunctions to stay proceedings in state courts. It is true that that case is distinguishable from the one at bar, as it was a liability of the receivers, while the case at bar is a liability

accruing prior to the appointment of the receivers. But the principle of law involved is not affected. The court observed in this last case that:

"The court did not surrender its jurisdiction over this class of claims, nor did its jurisdiction end with the execution and delivery of the deed of conveyance. It specifically provided in the decree of sale what liabilities the purchaser of the railroad property should assume as a part of the purchase price therefor, and how such liabilities should be ascertained. These provisions of the decree entered into and became a part of the contract of purchase. The railway company by its purchase became a party to this suit. It is bound by the terms of the decree of sale, and it has a right to have them enforced in its behalf."

In Central Trust Co. v. Western N. C. R. Co. (C. C.) 89 Fed. 24, this question is quite thoroughly reviewed by Judge Simonton, in which the following propositions are laid down: Where the decree of the federal court and the confirmation of sale provided that the purchaser should become and be regarded as a party to the suit, although the decree of sale was binding, it did not determine the case. The case is so far a continuing proceeding that the purchaser could file a supplemental bill for an injunction restraining third parties from bringing suit in the state court to attack the decree of the circuit court, and that the federal court would enjoin such proceeding in the state court, the effect of which would be to annul its judgment, notwithstanding the provisions of section 720 of the Revised Statutes. Speaking of the decree, which provided that the cause and the purchaser under its jurisdiction were subject to the enforcement of such orders as might from time to time become necessary, the court said:

"If the purchaser, under the clauses quoted, is held bound to the court to obey its orders, surely the purchaser has a corresponding right to call upon the court for its aid against what has been done in opposition to its orders. One of the obligations of the purchaser is to hold subject to the first mortgage, and in argument it has been claimed that the purchaser has, as between itself and the North Carolina Railroad Company, become the principal, as far as the debt under this mortgage is concerned, and the North Carolina Railroad Company a surety."

See, also, French v. Hay, 22 Wall. 250, 22 L. Ed. 857.

In Minot v. Mastin, 37 C. C. A. 234, 95 Fed. 737, the court say:

"No rule is better established than that a court having the custody of property through the agency of its receiver will not suffer that possession to be disturbed, either by levy or sale under process issued by some other court, or by the bringing of an independent suit against its receiver to recover the possession of the res, or to enforce a lien thereon, or to establish any other claim thereto."

Under paragraph 16 of the decree of foreclosure in the receivership at bar, it is provided that the master's deed shall vest in the purchaser all the right, title, estate, and interest and property, real and personal estate, and franchises, in fee simple, forever, to the property sold, and shall entitle the grantee, upon compliance with the conditions of sale, to the possession of the premises and property, and shall be a perpetual bar, both in law and equity, to the Kansas City, Pittsburg & Gulf Railroad Company, and the defendants in this suit, and each and every of them, and all persons claim-

ing by, from, or under them, or any of them, of, in, or to, or in respect of, said premises, property, or franchises, etc. The fifteenth paragraph of the decree lays the obligation upon the purchaser to make payment of all indebtedness and liability incurred by said railroad company, "which may be finally found and decreed to be prior in lien or superior in equity to said mortgage." Paragraph 19 of the decree directs the master to give notice to all holders of claims against the railroad company or the receivers to present the same to him for allowance, or, "if a claim against the receivers, to bring suit against them thereon; and barring all such claims that shall not be presented or sued on within six months." It will be recalled that in the discussion at bar counsel for plaintiff in the state court directed special attention to the language last above quoted, as authority for the institution of this suit. The language "or, if a claim against the receivers, to bring suit against them," was inserted by the court, bearing in mind the provisions of the judiciary act of 1887–89 (25 Stat. 436), authorizing parties to bring suit against receivers without leave of the court. In drawing the decree the court was regardful of this right, and therefore employed this language in reference to causes of action against the receivers during their administration of the property; but the other class of claims, such as the one at bar, was to be presented to the master for allowance. The second clause of the sixth paragraph expressly requires that the purchaser at the foreclosure sale should enter his appearance in this court, and gives him the right to contest any claim, demand, or allowance undetermined at the time of sale, or which thereafter may have arisen or been presented, and which would have been payable out of the proceeds of the sale herein, or by such purchaser, or with which the property purchased would have been chargeable. By the very terms of the decree, therefore, the purchaser was made a party to this suit, in effect continuing the jurisdiction of the court over the subject-matter, with the right to determine all claims assumed by the purchaser, giving the purchaser the right to contest the same, with the right of appeal therefrom. These provisions in their very nature contemplated that all proceedings attempting to charge the property in the hands of the purchaser with liens or preferred claims should be instituted in this court, and not in any other jurisdiction. In the decree confirming the sale the court reserved and retained jurisdiction of the cause, with power to enforce the provisions of the decree, including the right to retake possession of the property and sell any part of it to enforce compliance with the orders of the court in respect of the payment of the prior indebtedness and liabilities imposed upon the purchaser by the decree. The decree further required the presentation of all claims for allowance to the master within six months, and for a hearing and determination of the same, reserving the right to retake possession of the property and sell the same, or to appoint a receiver, if the purchaser should fail or refuse "to pay such sums which may in this cause, or in any of the courts of ancillary jurisdiction, be allowed and directed to be paid." The Guardian Trust Company, plaintiff in the suit in the state court, was a party defendant to the fore-

closure proceedings in this court. By every consideration of right and justice, it is bound and controlled by the provisions of the decree therein. It might have intervened in the principal suit if it desired to do so. Minot v. Mastin, 37 C. C. A. 234, 95 Fed. 734. In Cutter v. Water Co. (C. C.) 96 Fed. 777, the court animadverted upon the conduct of one who was a party to the suit, standing by during the litigation without asserting any prior claim, and suggested that he was guilty of such laches in the case as ought to preclude him from afterwards asserting a prior claim. In the case at bar the Guardian Trust Company stood by during the whole litigation, and allowed the decree of foreclosure to be entered, the property sold, and the deed delivered to the purchaser, the Kansas City Southern Railway Company, and possession taken of the property, with knowledge of the fact that the purchaser thereupon issued and put upon the market and sold bonds of the company, without protest, or making known the claim which it now seeks to assert against this railroad property in the suit in the state court, in which it, in effect, assails the validity of the decree, and asks for the enforcement of a lien against the purchased property prior to that of the mortgage. Notwithstanding the protest of counsel that the object of the suit in the state court is only to establish the existence of a claim against the property purchased at the foreclosure sale, without more, it is quite apparent from the various and repeated allegations and charges in the petition filed in the state court that it was modeled after the bill of intervention in the case of Louisville Trust Co. v. Louisville, N. A. & C. R. Co., 174 U. S. 674, 19 Sup. Ct. 827, 43 L. Ed. 1130, the object of which was to assail the validity of the decree of foreclosure on the ground of fraud in obtaining it. It is unnecessary to quote from the allegations of the petition filed in the state court to sustain this conclusion. Paragraph after paragraph of the petition charges a fraudulent conspiracy among the organization committeemen to secure the foreclosure, with a view of the reorganization of the company so as to cut out the rights of other creditors, and that such fact was not disclosed to the court in the foreclosure proceedings. It is distinctly and repeatedly alleged that the plan devised by the reorganization committee and the parties thereto was to secure the foreclosure for the protection of the parties interested in said plan, so as to get complete control of the property, and issue bonds and stock in the new company, and cut out other bond and stock holders and creditors; that after the sale the Kansas City Southern Railway Company, for the purpose of carrying out said plan or scheme, issued or was about to issue first mortgage bonds in the sum of $750 for each $1,000 of bonds issued by said Kansas City, Pittsburg & Gulf Railroad Company, and deliver the same to the holders and owners of said bonds of the defendant railway company, and that it had issued or was about to issue preferred and common stock, and deliver the same to the stockholders of the Kansas City, Pittsburg & Gulf Railroad Company, in accordance with the terms of said modified plan; that said values were based solely upon the right to acquire in said new company, under said modified plan, its capital stock, and thereby secure

110 F.—2

and obtain an interest in the property of the Kansas City, Pittsburg & Gulf Railroad Company so to be sold. In positive contradiction of the assertion made by counsel that the only purpose of the proceeding in the state court is to establish the validity of the plaintiff's claim against the Kansas City, Pittsburg & Gulf Railroad Company, the prayer for relief is not only for judgment for the amount which may be found to be due the plaintiff, but it expressly prays that said judgment shall be decreed to be prior in right and prior in equity to any indebtedness secured by the mortgage foreclosed, and that the amount adjudged to be due the plaintiff be declared to be a prior lien upon the property acquired by the Kansas City Southern Railway Company under the foreclosure sale, and, further, that the plaintiff have the process of the state court for the enforcement, by levy and sale, against the property acquired under the foreclosure sale for the collection and payment of said judgment, and that the plaintiff have such other and further relief as the nature of the case requires. Manifestly, this would be an interference with the prior jurisdiction of this court to determine the question of priority between said judgment creditor and the mortgagee in the foreclosure suit. By the very terms of the decree of foreclosure the purchaser thereunder was assured that such questions of priority and the liability of the purchaser were reserved for the determination of this court, whose jurisdiction, as alleged in the supplemental bill, is a continuing one. It is furthermore apparent from the petition in the state court that the purpose and object of the suit is to inquire into the regularity and legality of the proceedings in this court resulting in the foreclosure and sale of the property. It was, moreover, admitted and stated by counsel for plaintiff that the Guardian Trust Company had heretofore presented its claim, pursuant to the provisions of the decree of court, for allowance, which claim is now pending before the master appointed by this court in the foreclosure proceeding; thereby having recognized the superior jurisdiction of this court, and sought relief in the manner thereby provided. The jurisdiction of this court over the subject-matter of the suit instituted by plaintiff has never been cast off. The property of the Kansas City, Pittsburg & Gulf Railroad Company, purchased as aforesaid by the Kansas City Southern Railway Company under the provisions of the decree of foreclosure and the order approving the sale, is, in contemplation of law, in custodia legis, under the control of this court. Any liability imposed upon the Kansas City Southern Railway Company for debts and obligations of the Kansas City, Pittsburg & Gulf Railroad Company has its origin in the decree of this court, by which any claimant asserting any right against said purchaser must come to this court and submit to its jurisdiction alone to have his claim litigated and determined. To repeat, in requiring the purchaser of the mortgaged property to submit itself to the jurisdiction of this court for the determination of any claims against it, it was assured of the exclusive jurisdiction of this court to determine what claims it should be required to pay in addition to the purchase money at the sale. It is therefore the duty of this court to protect it in such right. It would be an act of bad faith

on the part of this court to the purchaser under the decree to subject it to the investigation and judgment of some other court for the determination of any liability arising before it took the property. The proper remedy for the protection of the purchaser under the foreclosure decree is by a supplemental bill filed in the original proceeding, to which it was made a party, and for an injunction to restrain the claimant from further proceeding in the state court. It is accordingly so ordered.