CENTRAL TRUST CO. OF NEW YORK v. WESTERN NORTH CAROLINA R. CO. et al.

(Circuit Court, W. D. North Carolina. December 19, 1901.)

1. RAILROADS—EFFECT OF SALE UNDER FORECLOSURE.

On a sale under a decree of foreclosure of all the property and franchises of a railroad company, mortgaged by it as permitted by its charter, and the conveyance of such property and franchises to the purchaser, as directed by the court, the company is devested of all its right, title, and interest therein, and has only remaining its franchise to exist as a corporation; and it cannot, by any act or negligence of its own, thereafter subject the property so sold, or the franchise of the corporation to exercise the rights, powers, and privileges of a railroad company in connection therewith, to liability.

2. FEDERAL COURTS—INJUNCTION AGAINST PROCEEDING IN STATE COURT.

A circuit court of the United States is not prevented, by Rev. St. § 720, from granting an injunction to stay a proceeding in a state court, where necessary to protect its own prior jurisdiction, or to render effective its own decree; and where it has rendered a decree foreclosing a mortgage on a railroad, and has sold the property thereunder, and conveyed the same to the purchaser, expressly providing in its decree of confirmation that the purchaser shall take the property and franchises as the absolute owner thereof, and free from the claims of any one claiming by, under, or through the mortgagor, it has jurisdiction, as ancillary to such suit, to entertain a supplemental bill filed by the complainant and the purchaser therein for an injunction to restrain the threatened sale of the property under an execution issued from a state court upon a judgment rendered against the mortgagor company, on a cause of action which arose after the sale and after the purchaser had been placed in possession of the property. Under such circumstances, the attempt to subject the property to the judgment against the mortgagor is in direct defiance and contravention of the decree of the federal court, and it is the duty of that court to protect its purchaser and its jurisdiction by maintaining the effectiveness of its decree.[1]

In Equity. On supplemental bill for an injunction.

Charles Price, for complainant.

A. C. Avery, B. F. Long, and Lee S. Overman, for defendants.

BOYD, District Judge. This is a bill, supplemental to and in aid of the original bill of foreclosure, filed by the Central Trust Company of New York, as trustee, to foreclose a second mortgage executed by the Western North Carolina Railroad Company, a North Carolina corporation, upon its property of every kind, including the franchises of the corporation. This second mortgage covered, of course, the equity of redemption of the corporation. Indeed, after the execution of the first mortgage, all the right, title, and estate of the Western North Carolina Railroad corporation in and to the Western North Carolina Railroad equipment and franchises, except the one to be and exist as a corporation, known as that of the corporators, was its equity of redemption in the property mortgaged. This was conveyed to the Central Trust Company of New York, as trustee for the bondholders, whose bonds were secured by that mort-

---

[1] Enjoining proceedings in state courts, see notes to Garner v. Bank, 16 C. C. A. 90; Trust Co. v. Grantham, 27 C. C. A. 575.

gage, known as the "second mortgage." Upon the foreclosure of this mortgage, sale of the property and franchises so conveyed, the decree of confirmation of sale, and the execution and delivery. of the deed, the Western North Carolina Railroad Company had no estate of any kind whatsoever in the Western North Carolina Railroad equipment or franchises of the corporation so conveyed in trust, and so sold under the decree of this court, to the Southern Railway Company, which company, complainant in this bill, was, on the 23d day of August, 1894, duly accepted by the court as the purchaser "of all and singular the railroad property and franchises sold under the decree in this cause." This appears from the decree of confirmation of sale, of the date above stated, duly entered upon the records of this court. It is also set out in the said decree that, upon the delivery of the conveyance by the master to the purchaser, the Southern Railway Company, the said company "shall fully possess and be invested with all of the estate, right, title, and interest in, to, and of such railroad equipment, property, and franchises so sold under the decree of this court, as the absolute owner thereof, to have and to hold the same, to it and its successors and assigns, forever." This was the decree of the court, entered the 22d of August, 1894. Since that time the Western North Carolina Railroad Company, if in existence, has been without property of any nature whatsoever. Since that time, as shown by Circuit Judge Simonton in his opinion in this case, reported in 89 Fed. 24, the Western North Carolina Railroad corporation has had no property, no franchise, except the franchise of the corporators, which is that to exist as a corporation. It has had no railroad. It has no right to operate a railroad, no right to construct a railroad, no right of eminent domain. Its railroad was sold, every franchise it owned, except the one mentioned, to exist as a corporation, was sold, and purchased under the decrees of this court by the complainant, the Southern Railway Company, a Virginia corporation, doing business under the laws of comity in the state of North Carolina.

This was the status of affairs at the time the engineer, James, intestate, and fireman, Howard, intestate, were killed on the line of this railroad, on the 17th of November, 1896, as appears by the record filed herein. These men were servants of the Southern Railway Company when killed; it not being pretended they were employed by the Western North Carolina Railroad Company. As already shown, they could not have been employed by that company, it having no power to employ servants; such power, such right, one of its franchises, having been sold and purchased by complainant, the Southern Railway Company, in 1894, two years before the deaths of these men, these servants, James and Howard. Memphis & L. R. R. Co. v. Railroad Com'rs, 112 U. S. 610, 5 Sup. Ct. 299, 28 L. Ed. 831; Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244. At this point the above cases are cited to show the well-known, well-recognized distinction between a franchise to exist as a corporation, known as the franchise of the corporators, and the franchise to exercise the rights, powers, and privileges conferred by its charter upon the corporation, known as the

franchise of the corporation. The latter is in one sense the property of the corporation, and can be mortgaged by the corporation, if so empowered by the sovereign granting its charter of incorporation. This franchise was mortgaged, the charter of the company and the statutes of the state having so authorized, together with its other property. The power to mortgage carries with it the power to foreclose and sell. To render this latter power effective, there is carried with it the power of foreclosure and sale. Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009, 29 L. Ed. 244. The principles laid down in this case are interesting, and very pertinent to those involved in the case now being considered. So there was a mortgage, a foreclosure and sale, and, at the time of the deaths of these men, the Southern Railway Company was in possession of this railroad, its absolute owner, as already shown. It was in possession of the railroad, and operating it, under and by virtue of the franchise of the corporation, conveyed to it by the court, under the decree of foreclosure and sale.

At the February and March term of the superior court of Rowan county for the year 1898, two judgments, one in favor of James, administratrix, and the other in favor of Howard, administratrix, rendered against the Western North Carolina Railroad Company, were duly entered of record in the said court. Upon these judgments executions were issued in due form against the Western North Carolina Railroad Company, on the 3d day of September, 1901, and placed in the hands of the defendant D. R. Julian, sheriff of the county of Rowan, to be served as final process, directing him to satisfy the judgments out of the personal property of the defendant within his county, or, if sufficient personal property "could not be found, then out of the real property of the defendant" within his county, "as owned and held by it on the day when the said judgments were docketed in the county of Rowan." Having the final process in his hands, directing him to satisfy the judgments, upon which issued, one in the sum of $15,000, and the other $5,000, the former in favor of James, administratrix, and the latter of Howard, administratrix, it is to be observed that the property out of which satisfaction was ordered to be made was that "owned and held by it on the day when the said judgments were so docketed in the county of Rowan." This is the exact language of the process, the executions. Then, in looking for property "owned and held by it," the Western North Carolina Railroad Company, defendant in the executions, on the day when the said judgments were docketed, in March and February, 1898, this property, advertised for sale,—that is to say, the Western North Carolina Railroad equipment and franchises,—was found, not "owned and held" by the defendant, but by the Southern Railway Company. This ownership is evidenced by a deed duly registered in the office of the register of deeds for the county of Rowan, on the 5th day of November, 1894, in Book 76, pages 505 et seq., made and executed in accordance with the decrees of this court. So that, unless that deed was a nullity, and the decrees of this court, duly entered, also nullities, this property, the railroad and franchises, was the property of the Southern Railway Company;

the Western North Carolina Railroad Company having at that time no estate of any kind or character in or to the same. And when the sheriff, defendant, proceeded to levy the executions in his hands, directed against the Western North Carolina Railroad Company and its property, upon the property and franchises so conveyed, he committed a trespass upon the rights and property of the Southern Railway Company, which company this court had accepted as the purchaser of the property and franchises years before James and Howard, intestates, were killed, and which company was at the time in the quiet and undisturbed possession of the property and franchises as it was on the day the said judgments were docketed in 1898, and as it was on the day these executions were levied by the defendant Julian. The sheriff having advertised this property for sale, and published that he would, on the 7th day of October, 1901, sell the same, "agreeably to the laws of the state in this behalf provided," the complainants, on the 5th day of October, 1901, filed this bill, praying, in substance, that this officer be restrained and enjoined from proceeding further with this sale.

This is a supplemental bill, and clearly the complainants are entitled to the relief they ask. The jurisdiction of the circuit court of the United States was exercised over the property when the bill for foreclosure and sale was filed and the decree of sale entered. The property and franchises came then within its jurisdiction and under its protection. After this decree of sale, after the foreclosure sale and decree of confirmation of sale, in which it was decreed, on the 22d day of August, 1894, that the "Southern Railway Company shall fully possess and be invested with all of the estate, right, title, and interest in, to, and of such railroad equipment, property, and franchises so sold under the decree of this court as the absolute owner thereof, to have and to hold the same, to it and its successors and assigns, forever;" and after the execution and delivery of the deed conveying this property to the purchaser in accordance with these decrees, any process issuing from any court against the property so sold and conveyed, on account of anything done or omitted to be done by the Western North Carolina Railroad Company, is void and a nullity. Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390. In this case Justice Matthews says: "To attempt to seize" property under like circumstances "by a foreign process is futile and void." It would be "nothing less than lawless violence." Id. It would be a mockery to say that this court cannot, under conditions like the present, protect its purchaser in the enjoyment of its property, bought, as this property was, under the decrees of this court. Having taken this property within its jurisdiction, and exercised the same over it, long before the deaths of James and Howard, it cannot be taken in execution to satisfy judgments against the Western North Carolina Railroad Company, obtained against it for its negligence thereafter in causing these deaths. The decree of confirmation of sale expressly provides that the purchaser takes the property and franchises "free from any one claiming by, under, or through the Western North Carolina Railroad Company." This claim, on account of its negligence by, un-

der, or through the Western North Carolina Railroad Company, had its origin in events transpiring after the sale and conveyance to the Southern Railway Company in pursuance of the decrees of this court, and long after the purchaser was fully possessed of the property and franchises so sold and conveyed. When the decree of foreclosure was entered, on the 5th day of May, 1894, the corporation respondent and stockholders were bound by it. So likewise are all claiming under, by, or through the corporation or stockholders. The decree of foreclosure is conclusive against them all. It is not only so in law, but so expressly provided in the decree of confirmation of sale, entered in this suit on the 22d of August, 1894.

It has not been suggested that this court, in the foreclosure suit,—this original suit,—had not jurisdiction of the cause. All of its decrees entered from time to time in its progress were in due course of the court, in due form and order. Yet the levies made by the defendant Julian, sheriff, and the advertisements of sale "agreeably to law," which requires the officer to seize the railroad immediately after sale and deliver it to the purchaser, condemn this foreclosure suit, its legality and validity. This conduct by the sheriff is in defiance of the orders and decrees of the court so entered in this suit. When the court took possession of the mortgaged property, the corporation was represented, as were the stockholders, and when the decrees were entered all issues were decided. There was a final adjudication of the rights of the stockholders and of those of the corporation. There was nothing that respondent corporation could do to bind this property after the final decree was entered confirming the sale of the same, now about to be seized by the defendant Julian in satisfaction of judgments obtained against it after the sale upon alleged causes of action which arose, also, long thereafter.

Section 674 of the Code of North Carolina makes it the duty of the officer making the sale to deliver possession of the railroad to the highest bidder at the sale. "The officer shall, immediately after such sale, deliver to the purchaser possession of all the corporate real property, connected with the franchise, belonging to such corporation &c." This is the language of the statute. To do this would work irreparable damage to the complainant. The notice of sale and sale would be to cast a cloud upon the title of the complainant to this property, to prevent which the court is asked to issue its injunction,—"the unquestionable right and power of this court." Central Trust Co. v. Western N. C. R. Co. (C. C.) 89 Fed. 24; Rodgers v. Pitt (C. C.) 96 Fed. 668. In this last case all the cases are cited bearing upon this question of the jurisdiction of the federal and state courts over the same subject-matter, and upon the right of one court to restrain proceedings in another. There can be no conflict of jurisdiction between the courts, state and federal, under our system of government. To prevent it, it is only necessary to observe the laws of comity between the courts. A state court will not be so regardless of the comity which does exist, and should exist, between courts sitting within the same territory, as to sit in judgment upon the validity of a decree of a federal court,

entered in the exercise of its jurisdiction long before the jurisdiction of the state court is attempted to be asserted. Nor, on the other hand, will a federal court be so regardless of that comity as to assert jurisdiction over the subject-matter of a suit over which the state court has already assumed jurisdiction. In the judicial history of this country, this law of comity has always been observed; and, as long as it is, there can be no conflict. Central Trust Co. v. Western N. C. R. Co. (C. C.) 89 Fed. 24; Rodgers v. Pitt (C. C.) 96 Fed. 668; Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390; French v. Hay, 22 Wall. 250, 253, 22 L. Ed. 857; Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497; Fisk v. Railroad Co., 10 Blatchf. 518, Fed. Cas. No. 4,830; President, etc., v. Merritt (C. C.) 59 Fed. 6; Wadley v. Blount (C. C.) 65 Fed. 667.

In Union Trust Co. v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401, the court said:

"The main question arising is one of great delicacy, and the history of the jurisprudence of this country shows a most commendable disposition on the part of both the federal and state courts not to impinge upon each other's jurisdiction; but the delicate nature of the matter furnishes no reason why the court to which the jurisdiction belongs should not firmly assert and maintain its rights. Nougue v. Clapp, 101 U. S. 551, 25 L. Ed. 1026."

The complainant, the Southern Railway Company, has filed this supplemental bill, together with the original complainant, the Central Trust Company of New York. This is done, as is well said by Judge Simonton, in his opinion in 89 Fed. 24, already referred to, in accordance with the well-settled practice in the federal courts. It may be as well after as before a decree. The authority for it is beyond question. It is fully discussed in the case of Root v. Woolworth, 150 U. S. 401, 14 Sup. Ct. 136, 37 L. Ed. 1123. It may be, however, as shown by that same judge, treated as an original bill, in aid of the original bill of foreclosure, filed in May, 1894, dependent upon it and ancillary to it.

It was insisted in the argument by the respondents that this proceeding is in violation of section 720 of the Revised Statutes. That section is taken from the original judiciary act of 1789 (1 Stat. 73), said to have been drawn by Oliver Ellsworth, at that time a senator from Connecticut and chairman of the committee to organize the judiciary, and is only in affirmance of the well-settled law of comity, which I have already discussed. It is not to enjoin proceedings in a state court, as provided in that section, but to prevent the defeat and impairment of the jurisdiction of this court, already assumed and exercised, in the original foreclosure suit, when the process in that suit was served and decree of foreclosure and sale entered. This injunction is prayed and granted to maintain that jurisdiction, which, it is not denied, was rightfully assumed in that suit. This same objection was urged by the respondents in all the cases, relied on to maintain the jurisdiction of the court, cited in this argument. In every case it was clearly shown that the proceeding was not in violation of section 720, but taken, based upon the principles so clearly defined by Justice Matthews in the case of Covell v. Heyman, 111 U. S. 176, 4 Sup. Ct. 355, 28 L. Ed. 390, and by Justice Miller, in Re Farmer's

Loan & Trust Co., 129 U. S. 213, 9 Sup. Ct. 265, 32 L. Ed. 656. In the late case of Harkrader v. Wadley, 172 U. S. 148, 19 Sup. Ct. 119, 43 L. Ed. 399, Mr. Justice Shiras, in his well-considered opinion, says "that the prohibition in section 720 does not apply when the jurisdiction of a federal court has first attached." He further says that this is so in cases of "ancillary bills" filed in the federal courts to enforce their own judgments, by preventing defeated parties from wresting property from plaintiffs who by final judgments are entitled to it.

It is further suggested—indeed, strenuously insisted—that the principles laid down in this case were before the circuit court of appeals and passed upon, and that the court decided, in effect, the injunction should not issue. James v. Trust Co., 39 C. C. A. 126, 98 Fed. 489. I construe that decision to be in support of the contention of the complainant. It was an appeal from the decree entered upon the circuit by Judge Simonton in this suit. The injunction was granted as prayed for in the bill, and the decree appealed from affirmed, with the modification that, as drawn, it was broader than prayed for in the bill. Every principle laid down by Judge Simonton was affirmed; the court expressly holding "that a circuit court of the United States is not prevented by Rev. St. § 720, from granting an injunction against a proceeding in a state court when necessary to render effective its own decree." The injunction is issued by the court to render effective its own decree; and when a stockholder, or any one claiming under, by, or through the corporation, institutes a proceeding in a state court, whether it be a suit to declare void the decree, or the issuing of executions against the property decreed to be sold, and sold to a purchaser, he will be enjoined by this court. The injunction will issue to render effective the decrees heretofore entered. The decree already referred to, adjudicating that the purchaser, the Southern Railway Company, is fully and absolutely possessed of this railroad, property, and franchises, free from the claim of any one "by, under, or through" this corporation, is rendered ineffective, null, and void by a seizure of this property by the sheriff, for and on account of a thing done by the corporation years after the sale and conveyance to the complainant, the Southern Railway Company. This process is void.

Let an injunction issue against the defendant Julian in this suit, and all others who join in the proceedings with him, in accordance with the prayer of the bill; the same to remain in force until the further order of this court.

It is so ordered.