MORGAN *v.* PARHAM.

1. When a vessel is regularly registered in the port to which she belongs, that is to say, "in the port nearest to which her owner, husband, or acting and managing owner usually resides" [registered, *ex. gr.*, at New York], the fact that she may be temporarily in a port of a State [as *ex. gr.*, Mobile, in Alabama], other than that where her home port is, and engaged in lawful commerce—one of a daily line of steamers—between

that port and the port of a yet third State [as *ex. gr.*, New Orleans in Louisiana], does not cause her to become incorporated into the personal property of the State of Alabama, and no State but that in which her home port is has dominion over her for the purpose of taxation.

2. The fact that the vessel was enrolled by her master as a coaster at Mobile, Alabama, and that her license as a coaster was renewed from year to year, does not affect her registry in New York or her ownership there. It accordingly does not change the rule.

ERROR to the Circuit Court for the Southern District of Alabama; the case being thus:

The Constitution ordains that

"Congress shall have power to regulate commerce between the States."

An act of Congress passed December 31st, 1792,\* enacts that

"Every ship or vessel shall be registered by the collector of the district in which such ship or vessel shall belong at the time of her registry, and her port shall be that nearest to which her owner, husband, or acting and managing owner usually resides, and the name of the vessel and the port to which she shall so belong shall be painted on her stern, on a black ground in white letters, not less than three inches in length."

The omission to designate the name "and *port to which she belongs*" is made penal.

An act of February 18th, 1793,† for enrolling and licensing vessels employed in the coasting trade, enacts thus:

"SECTION 3. That it shall and may be lawful for the collectors of the several districts to *enrol and license* any ship or vessel that may be *registered*, upon such registry being given up; or to register any ship or vessel that may be enrolled upon such enrolment and license being given up. And when any ship shall be in any other district than the one to which she belongs the collector of such district, on the application of the master or commander thereof, and upon his taking an oath or affirmation that according to his best knowledge and belief the property

---

\* Section 3d; 1 Stat. at Large, 56, 288.            † Ib. 306.

remains as expressed in the register or enrolment proposed to be given up, &c., shall make the exchanges aforesaid; but in every such case the collector, to whom the register or enrolment and license may be given up, shall transmit the same to the Register of the Treasury; and the register, or enrolment and license granted in lieu thereof, shall within ten days after the arrival of such ship or vessel within the district to which she belongs, be delivered to the collector of the said district, and be by him cancelled."

This provision of the Constitution, and these acts being in force, the steamer " Frances " was assessed in the years 1866 and 1867 as personal property in the city of Mobile, belonging to one Morgan. A tax was laid upon the vessel, and remaining unpaid, the same was seized by the collector of the city of Mobile. The owner, Morgan, brought an action of trespass in the court below against the collector for such seizure, and the collector justified by virtue of his tax warrant.

The facts upon which the question of the liability to taxation of the vessel depended, were these:

The Frances was brought to Mobile in 1865, and from that time until the trial in 1870, had been employed as a coasting steamer between Mobile and New Orleans. Before being brought to Mobile, the vessel was duly registered at the port of New York, under the ownership of the plaintiff, and the name of the vessel and her port of New York were then painted on her stern, according to the acts of Congress, and the same had ever since so remained. The plaintiff then was and since had remained a citizen of New York. The vessel then was the property of the plaintiff, and had continued to be his property from that time to the day of the trial.

In January, 1867, the vessel was regularly enrolled at the custom-house in Mobile by her master, as a coaster, and her license as a coasting vessel was renewed in the several years 1868 and 1869, and with other similar vessels constituted one of a daily line of steamers plying between Mobile and New Orleans. During this term the captain of the vessel

had been a resident of Mobile, and the agent conducting the business of the vessels at Mobile was resident there, occupied an office there for such business, and employed and paid the persons who assisted him therein, but such agent was under the control of a superior agent residing in New Orleans, who employed and paid the captain and other officers of the vessel. A wharf and office in Mobile were occupied for the use of these vessels. The vessels were built at Wilmington for the domestic trade. They transported the mails, freight, and passengers between Mobile and New Orleans, and this business was extensive and profitable. Upon these facts the question arose, was this vessel subject to taxation as personal property under the laws of the State of. Alabama?

The court held that the vessel was taxable under those laws, and gave judgment for the defendant. To review that judgment the present suit was brought.

*Mr. P. Phillips, for the plaintiff in error,* contended that the vessel was owned in New York, had not been blended with the commerce and business of Alabama, was engaged in the interstate coasting trade, and that her taxation by the authority of Alabama would be in violation of that provision of the Constitution of the United States which gives to Congress the regulation of commerce between the States.

*Mr. C. W. Rapier (with whom was Mr. C. F. Moulton), contra,* insisted that the vessel was personal property within the State of Alabama, and subject to the general rule of taxability.

Mr. Justice HUNT delivered the opinion of the court.

The fact that the vessel was physically within the limits of the city of Mobile, at the time the tax was levied, does not decide the question. Thus, if a traveller on that day had been passing through that city in his private carriage, or an emigrant with his worldly goods on a wagon, it is not contended that the property of either of these persons would

be subject to taxation as property within the city. It is con-ceded by the respective counsel that it would not have been.

On the other hand this vessel, although a vehicle of com-merce, was not exempt from taxation on that score. A steamboat or a post-coach engaged in a local business within a State may be subject to local taxation, although it carry the mail of the United States. The commerce between the States may not be interfered with by taxation or other inter-ruption, but its instruments and vehicles may be.* It is not, therefore, upon this principle that we are to decide the case. Nor does it fall within that range of cases of which *The Steamship Company* v. *The Portwardens*,† and *Gibbons* v. *Ogden*,‡ furnish illustrations. In each of those cases the taxation was upon a subject directly connected with the navigation of the public waters and with the commerce of the country. In the first case a statute had been passed requiring every vessel entering the harbor of New Orleans to pay five dollars to the port wardens, in addition to other fees, whether any service were performed or not. In the second case vessels navi-gating the waters of the Hudson River were required to take a license for that purpose from the State of New York. The imposition in this class of cases was a tax upon the use of the public waters of the country, and tended immediately to interfere with and to obstruct the commerce between the States. In the instance before us the tax was upon a vessel at the wharf. It was in this respect as if a tax had been laid upon lumber or cotton lying on the dock at Mobile.

This vessel was owned by and employed in the service of a resident of the State of New York. It was primarily and presumptively taxable under the authority of that State, and of that State only. It is urged that her status, or condition, was affected by what was done, or neglected, in regard to her register and enrolment. In *Blanchard* v. *Martha Wash-ington*,§ the law on this subject is thus explained: "Ships or vessels are required to be registered‖ by the collector of the

---

* Gibbons *v.* Ogden, 9 Wheaton, 1; "Passenger Cases," 7 Howard, 283.
† 6 Wallace, 31.                            ‡ 9 Wheaton, 210.
§ 1 Clifford, 466.                          ‖ 1 Stat. at Large, 288.

district in which shall be comprehended the port to which
the same shall belong at the time of the registry, which port
shall be deemed to be that at, or nearest to which, the owner,
if there be but one, or, if more than one, the husband and
acting manager usually resides." Permanent registry, there-
fore, as appears by this provision, is required to be made at
the home port of the vessel, and what is meant by the home
port is clearly and plainly defined. Registry must be made
at her home port, and the same section provides that the
name of the vessel, and the port to which she shall so belong,
shall be painted on her stern, on a black ground, in white
letters, of not less than three inches in length. All persons,
therefore, have the means of ascertaining the name of the
vessel and her home port, and her shipping papers, which
include a copy of her register or enrolment, are by law re-
quired to furnish the same information. The act of Feb-
ruary 18th, 1793, prescribes the terms and shows the effect
of enrolment in another port. In substance, the permanent
register is given up to the collector of that port, and a cer-
tificate is issued showing the name of the vessel, the port to
which she belongs, and that to which she is destined. This
certificate is temporary in its character, and is based upon
the proposition that the vessel belongs, or has her home port,
at a different place from that at which she receives this cer-
tificate.*

There was nothing, therefore, in her enrolment in the
port of Mobile that affected her registry in New York, or
her ownership in that place, or that tended to subject her to
the taxation of the State of Alabama, under the circum-
stances stated.

It is the opinion of the court that the State of Alabama
had no jurisdiction over this vessel for the purpose of taxa-
tion, for the reason that it had not become incorporated into
the personal property of that State, but was there tempora-
rily only, and that it was engaged in lawful commerce be-
tween the States with its *situs* at the home port of New

---

* Blanchard v. Martha Washington, *supra;* White's Bank v. Smith, 7
Wallace, 646.

York, where it belonged and where its owner was liable to be taxed for its value. The case of *Hays* v. *The Pacific Mail Steamship Company*,* is decisive of the case before us. In that case all the stockholders in the vessel sought to be taxed resided in New York, but had agencies in Panama and San Francisco, and a naval dock and yard at Benicia, in that State, for the purpose of repairing and furnishing supplies. On arriving at San Francisco the vessel usually remained a day only to unload her freight and passengers, and proceeded to Benicia for repairs and refitting for the next voyage, and usually remained there ten or twelve days. The vessels were part of a line plying in connection between New York and San Francisco, carrying freight and passengers, were all ocean ships and all registered in New York, and taxes were assessed upon them in that State. This route and this mode of proceeding was the permanent, regular, and con-. tinued business of the ships in question. Taxes for the years 1851 and 1852 were assessed upon the vessels under authority of the State of California, paid under protest, and suit brought to recover back the taxes so paid. A recovery was had below, and this court sustained the judgment in an able opinion delivered by my learned predecessor, Mr. Justice Nelson. The ships, it was held, were engaged in the business and commerce of the country upon the great highway of nations, touching at such ports and places as their interests demanded. He says, "So far as respects the ports and harbors within the United States, they are entered and cargoes discharged or laden on board, independently of any control over them except as it respects such municipal and sanitary regulations of the local authorities as are not inconsistent with the Constitution and laws of the General Government, to which belongs the regulation of commerce with foreign nations and between the States. . . . But whether (he proceeds) the vessel leaving her home port for trade and commerce visits, in the course of her voyage or business, several ports or confines her operations in the carrying-trade to one,

---

* 17 Howard, 596.

'are questions that will depend on the profitable returns of the business, and will furnish no more evidence that she has become a part of the personal property within the State and liable to taxation at one port more than the other. She is within the jurisdiction of all or any one of them temporarily and for a purpose wholly excluding the idea of permanently abiding in the State or changing her home port. Our merchant vessels are not unfrequently absent for years in the foreign carrying trade, seeking cargo, carrying it and unlading it from port to port during all the time absent; but they neither lose their national character nor their home port, as inscribed upon their stern."

This vessel, the Frances, remained the property of the plaintiff, with her home port at New York, and had never become blended with the commerce and property of the State of Alabama, within the principle of *People* v. *Commissioners.** The vessel touches tri-weekly or daily at Mobile, and the same at New Orleans. If her regular route were from New Orleans to Mobile, thence to St. Augustine, thence to Savannah, thence to Charleston, and returning by the same course, the case would be no different. She would be engaged in interstate commerce, with her home port still remaining unchanged, and the property continuing unmixed with the permanent property of either State. Her right to trade at each of those ports, without molestation by either of these States, is secured by the Constitution of the United States. The Federal authority has been exerted by the passage of the navigation laws and the issuing of a coasting license to this vessel. All State interference is thereby excluded.

Whether the steamer Frances was actually taxed in New York during the years 1866 and 1867 is not shown by the case. It is not important. She was liable to taxation there. That State alone had dominion over her for that purpose. Alabama had no more power to tax her or her owner than had Louisiana, or than Florida, Georgia, and South Carolina would have had in the case I have supposed.

The jurisdiction of this court over the present case, as in

* 23 New York, 224.

the case of *Hays* v. *The Pacific Mail Steamship Company*,\* arises from the facts, first that the property had not become blended with the business and commerce of Alabama, but remained legally of and as in New York; and secondly, that the vessel was lawfully engaged in the interstate trade, over the public waters. It is in law as if the vessel had never before or after that day been within the port of Mobile, but touching there on a single occasion when engaged in the interstate trade, had been subjected to a tax as personal property of that city. Within the authorities it is an inter-ference with the commerce of the country not permitted to the States.

JUDGMENT REVERSED.