SOMMERVILLE, J.
Plaintiff, domiciled and residing in St. Louis, Mo., enjoins the seizure and sale of the steamship Gut Heil for taxes for 1915, 1916, and 1917. The vessel had been rammed and sunk in 1912, and has been lying partially submerged in the Mississippi river since that time, within the parish of East Baton Rouge. Plaintiff became the owner in November, 1916.
Plaintiff claims exemption from taxation for his property under the federal and state Constitutions, and he alleges irregularities in the assessments thereof.
There was judgment in favor of the defendants, dissolving the preliminary injunctions, and the suit was dismissed. Plaintiff has appealed.
The Constitution provides for the taxing of all property; and the revenue statute imposes taxes upon all vessels, for which taxes have not been paid at their domiciles.
[1] The Gut 1-Ieil ceased to be engaged in overseas trade in 1912 when she was rammed and sunk in the Mississippi river.' At that time, she became valuable wreckage, owned by German citizens, who subsequently sold her to others; and she finally became the property of the plaintiff.
As the vessel was not engaged in overseas trade at the time it was assessed for taxation, and as it is not alleged or shown that she was registered at any port whatever, or that taxes had been paid thereon in any place, the action of the defendant in assessing the property is not violative of the commerce clause of the federal Constitution. The assessment and taxation of her is not an interference with interstate or foreign commerce to any extent.
Until the vessel has been raised and she is engaged in interstate or overseas trade and commerce, which may now be her true condition, she was not exempt from taxation under the amendment of the state Constitution. Act No. 253, p. 38, Ex. Sess., 1917. Only ships engaged in overseas trade and commerce, and domiciled in a Louisiana port, are exempted from taxation under the amendment.
The Gut 1-Ieil has not been engaged in commerce since 1912; she has not been a vessel incidentally or temporarily detained in the parish of East Baton Rouge for any cause. Her owners took or sent her there for the purpose of commerce; but after she was sunk and had become a wreck they abandoned their intention of engaging her further in commerce, and they sold the wreck. The present owner bought a wrecked vessel, perhaps with the intention of raising her and engaging her in overseas commerce; but as such wreckage she was subject to taxation, ■until she is engaged in overseas trade and commerce.
[2] In argument, it was stated that the assessments were supplemental, and that they had been made in the name of an unknown owner for two of the three years, and for all three years on one roll, instead of on separate rolls, in 1917. But these matters were not alleged in the petition, and there was no evidence on these points, except in answer to the question by the counsel for the defendant, “Did you know, at the time she was assessed to unknown owners, who her owner was?” the assessor answered, “I did not.”
It is alleged in the petition:
That the defendant the tax assessor “assessed said steamship for the years of 1915, 1916, and 1917, at a valuation of $100,000 for each of said years. * * * That the assessment and levy of said taxes upon said.ship are illegal, null, and void because, under the manner in which said assessment and levy have been made by the assessor of the said parish of East Baton Rouge, no review of said assessment had been had; the owner had no opportunity or means of inspection and correction of said assessment and levy; and, *1090 particularly, had not published a notice in a newspaper published in this parish.that the listing of this property has been completed and the estimated valuation made therein by the assessor, and that said list shall be exposed in the office of the assessor,” etc.
Plaintiff offered no evidence in support of these allegations, except to examine the assessor, as on cross-examination; and he testified that the property was listed and valued by him in April, and that the rolls were subsequently submitted to the police jury, sitting as a board of reviewers, who reviewed the assessment rolls for 1917 in his office. The assessor published a notice in the State-Times, a daily newspaper published in the city of Baton Rouge, on Wednesday, May 2, 1917, notifying “all persons liable to taxation” that the assessment rolls had been completed and that the lists would be exposed in his office for inspection and correction, for a term of 20 days beginning next after 10 days’ notice shall have expired. All taxpayers were invited to examine the rolls and to test the correctness of the same in a manner prescribed by law.
A similar notice wasi published in the same paper August 22, 1917, stating that a 'board of state affairs had officially passed on the assessments for state purposes, and that the rolls were in the assessor’s office and open for inspection for 20 days; and taxpayers were notified to examine their assessments prior to meeting of the police jury, sitting as a board of review, the meeting to be held September 11, 1917.
The irregularities in the assessments as set forth in the plaintiff’s petition were disproved by the above referred to evidence, and the assessments must therefore stand.
The judgment appealed from is affirmed, at appellant’s cost.
O’NIELL, J., takes no part, having been absent during the argument.
PROVO STY, J., absent on account of illness, takes no part.