IRVING T. BUSH and MARIAN S. BUSH, et vir., v. STATE ex rel. DADE COUNTY, HAYES WOOD, as Tax Collector, and J. N. LUMMUS, JR., as Tax Assessor.

191 So. 515

Division A

Opinion Filed October 17, 1939

278

S. J. Barco, Roy S. Wood, R. E. Bradley and Lowell M. Birrell, for Appellant;

James J. Marshall, Melbourne L. Martin and Stapp, Gourley, Ward & Ward, for Appellees.

BUFORD, J.—The appeal brings for review final decree, the pertinent part of which is as follows:

"IT IS THEREUPON ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

"1. That due and legal service has been had upon the defendants and cross-defendants in this cause, that answers have been filed by them and that they have been represented by counsel herein, that the court has jurisdiction of the parties to said cause and the subject matter thereof.

"2. That the exceptions of the defendants and cross-plaintiffs Irving T. Bush and Marian S. Bush, his wife, to the report of the Special Master, be and the same are each separately and severally overruled and denied.

"3. The court finds from an examination of the files and records herein, the master's report and the admitted facts that the Yacht Coronet is a vessel used solely for the pleasure of its owners and that it came to Miami harbor at Miami, Dade County, Florida, in the fall of the year 1931 and that it has remained in Dade County, Florida, either in the Miami harbor or in the Miami River, ever since for a period of practically seven years and that said boat has been continuously within the limits of Dade County, State

of Florida, all of that time; that while the owners of said vessel are shown to be residents of the State of New York yet said yacht has been knowingly permitted to remain in Dade County, Florida, continuously for said time and has acquired an actual physical situs in Dade County, Florida, for the purpose of taxation; that said property has been comingled in the mass of other personal property in this State and is subject to the same taxation and liability, therefore, as any other personal property movable by land or water, and the court finds no provisions in the Federal statutes exempting or prohibiting the taxation of this vessel as personal property for ad valorem taxation; that said vessel, from the facts admitted, was left here for an indefinite stay rather than simply a short temporary stay and the court finds from these facts that the situs of said boat or vessel from the time it was left here up to this time was based on an indefinite rather than a temporary stay and that under these circumstances, regardless of the fact that the owners were non-residents or the home port of the vessel may have been in another place, the vessel was subject to taxation by the State of Florida. The court finds no element of intersate or foreign commerce involved in this cause.

"4. The court, therefore, finds that the State of Florida and County of Dade was within its rights and powers in assessing said boat for taxation for the period of time mentioned in the master's report and that the assessments for the year 1932 up to and including 1937 are valid, legal assessments and that the State of Florida has a lien upon said vessel, to-wit: the yacht Coronet, that is prior in dignity to all other liens.

"5. The court finds that the State of Florida *ex rel.* Dade

County is entitled to recover the taxes based upon the assessments as follows:

For the year 1932 ............................................ ...........................$1,325.01
For the year 1933 ......................................................... 1,515.63
For the year 1934... ....................................................... 1,503.13
_____
Total ...............................................................................$4,343.77

and that the intervenor and cross-defendant, Hayes Wood, as Tax Collector for the County of Dade and the State of Florida is entitled to recover under the same lien for said assessments as follows:

For the year 1935 ........................................................$1,594.75
For the year 1936 ........................................................ 1,494.79
For the year 1937 ............................................. ................ 1,231.50

making a total due to the said Hayes Wood, as tax collector aforesaid, of $4,321.04.

"6. The total amount of said lien as stated in the foregoing paragraph owed to the State of Florida and Dade County is in the amount of $8,664.81, which constitutes one lien against the yacht Coronet, which lien the court finds should be enforced in this cause, together with all costs fixed by the court herein, together with clerk's costs and additional master's fees for making the sale in the event the same is necessary as hereinafter provided for.

"7. The court finds that a master's fee in the sum of $500.00 is a reasonable master's fee, and that a stenographic fee for transcribing the testimony in the sum of $30.00 is a reasonable amount for such stenographic fee, and the sum of $530.00 is hereupon fixed by this court as costs herein and secured by the same lien against said yacht Coronet. From the report of said master the court finds that J. N. Lummus, Jr., as Tax Assessor of Dade County, Florida, has heretofore advanced the sum of $62.50 that Hayes Wood, as Tax Col-

lector of Dade County, Florida, has heretofore advanced the sum of $62.50, and that the State of Florida *ex rel.* Dade County has heretofore advanced the sum of $30.00, and that S. J. Barco, on behalf of the defendants Marian S. Bush and her husband, Irving T. Bush, has heretofore advanced the sum of $25.00, leaving a balance due on said master's fee and stenographic fee in the amount of $350.00; that this court has heretofore by order dated August 27th, 1938, fixed the amount of these fees and costs and has directed that the balance in the sum of $350.00 remaining due and unpaid belongs to the master, David B. Newsom, the stenographic fee having been paid, and the defendants heretofore directed in said order that one-half of the balance shall be advanced by J. N. Lummus, Jr., as Tax Assessor of Dade County, Florida, and one-half of the balance advanced by Hayes Wood, as Tax Collector of Dade County, Florida, without prejudice or without determination of the liability ultimately for said costs to be fixed in the said final decree. The court hereby taxes said master's fee and costs in the amount of $530.00 together with clerk's costs and the cost of the special master's sale in the event the same is held as hereinafter provided, against the defendants Irving T. Bush and Marian S. Bush, his wife, and directs that said amount shall be incorporated into and become a part of the amount secured by said lien against the yacht Coronet; that upon the payment by the defendants of these amounts, either voluntarily or through the proceeds of the sale of said vessel, the parties advancing the respective amounts set forth, excepting the said S. J. Barco, attorney for the said defendants, shall be reimbursed for the amounts so advanced.

"8. That the court finds these amounts to be due and payable by the defendants Irving T. Bush and Marian S. Bush, his wife, and unless said amounts be paid forthwith and

immediately to the State of Florida *ex rel.* Dade County and Hayes Wood, as Tax Colector for Dade County, Florida, or their attorneys of record, together with all the costs herein-before specified the said hereinabove described personal property, to-wit: the yacht Coronet, together with all of its fixtures, furnishings, engines, tackle, equipment and appur-tenances belonging thereto, shall be sold by David B. Newsom, who is hereby designated and appointed special master of this court to execute and carry into effect this decree; that the said special master shall sell the said prop-erty under and by virtue of this decree at public outcry to the highest and best bidder for cash at the south front door of the County Court House in the City of Miami, Dade County, Florida, on a legal sales day of this court and during the legal hours of sale but not at an earlier date than the rule day in October, A. D. 1938, to-wit:  October 3rd, 1938.  The said special master shall first give notice of the sale by publishing said notice in the Miami Review and Daily Record, a newspaper of general circulation published in Dade County, Florida, in the following manner:  Once a week for four consecutive weeks beginning not less than twenty-eight days prior to the date of the sale.  Any sale of the property under lien, to-wit: the yacht Coronet, under this decree shall be made by the said special master subject to all unpaid taxes against the said property excepting those herein adjudicated, and no unpaid taxes against said prop-erty shall be paid out of the proceeds of any sale thereof. Out of the proceeds arising out of the sale of said property herein ordered to be sold to satisfy said decree the said special master shall first pay all costs and expenses of this proceeding, including the fees hereinbefore allowed and fixed as master's fees and stenographic costs, and he will then pay to the said State of Florida *ex rel.* Dade County

and to the said Hayes Wood, as Tax Collector of Dade County, Florida, the amount of the respective taxes adjudicated herein to be due and payable to the said respective parties. In the event the proceeds of the sale are not sufficient to pay both in full then the payments shall be made pro rata, and in the event said property shall sell for more than sufficient to satisfy the amounts hereinbefore found to be due, including said costs and master's fees, thereupon the master shall pay the surplus into the registry of this court to abide the further orders hereof; that the plaintiff, State of Florida *ex rel.* Dade County, or said Hayes Wood, as Tax Collector of Dade County, or the said parties jointly, may become a bidder at any sale made by the special master under this decree and may bid to the amount of this decree in their favor without being required to make any deposit with the said special master, the said special master crediting such bid of the plaintiff or said intervenor upon the final decree in their favor but if any other person, firm or corporation shall be the highest bidder at such sale then such bidder shall pay cash to the said master or in lieu thereof, cashiers' checks upon a local bank or banks satisfactory to said master."

Other provisions of the decree adjudicate foreclosure of rights of owners and others claiming interests in or liens on the property and directs distribution of the proceeds of the sale.

The appellant poses six questions for our consideration, as follows:

"1. Where an ocean-going pleasure yacht of more than twenty tons burden which is registered in the Port of New York, whose home port is New York City, whose owner resides and is domiciled there; and the situs of which is New York City under the Acts of Congress, and which

bears painted on her stern her name 'Coronet' and her home port 'New York' and which put into the Port of Miami in the Fall of 1931 as a foreign, transient, casual visitor on a pleasure cruise from her home port, subject to departure from Miami for such destination, domestic or foreign, as the itinerary of her owner might from time to time dictate and which remained at anchor in the City Yacht Basin in Biscayne Bay until August, 1933, when she was tied up at the docks of a ship yard in the Miami River where she has remained, remaining in commission at all times with her master and a full or reduced crew aboard ready at any time to put to sea on two or three days' notice at the direction of her owner, but sometime after her arrival at the Port of Miami her owner's finances became so involved as to make operation of the yacht for the time being impracticable—would the facts so stated give the yacht a taxable situs in Florida and subject her to taxation for the year 1932?

"2. Would the facts set forth in the first question give the yacht a taxable situs in Florida and subject her to taxation for the year 1933?

"3. Would the facts set forth in the first question give the yacht a taxable situs in Florida and subject her to taxation for the year 1934?

"4. Would the facts set forth in the first question give the yacht a taxable situs in Florida and subject her to taxation for the year 1935?

"5. Would the facts set forth in the first question give the yacht a taxable situs in Florida and subject her to taxation for the year 1936?

"6. Would the facts set forth in the first question give the yacht a taxable situs in Florida and subject her to taxation for the year 1937?"

On August 7, 1937, the State of Florida on relation of Dade County filed its bill of complaint against Irving T. Bush and his wife, Marian S. Bush, and Merrill Stevens Dry Dock Company, to enforce a lien for taxes claimed against a certain vessel known as the "Coronet" which belonged to the defendant Irving T. Bush and Marian S. Bush, his wife, and which taxes were assessed by the Tax Assesor of Dade County, Florida, for the years 1932, 1933, 1934, 1935, 1936 and 1937.

Thereafter, Tax Collector, Hayes Wood, filed petition to intervene.

On August 16, 1937, a restraining order was issued, enjoining the removal of the yacht from its mooring place in Miami River.

On August 24, 1937, Wood was allowed to intervene.

On September 8, 1937, the defendant Marian S. Bush filed her separate answer in which she denied the yacht "Coronet" was subject to taxation in Fliorida. In her answer she asked for affirmative relief and prayed that restraining order be vacated and the cause be dismissed, and that the tax assessment against the Yacht be set aside and be held to be unlawful and that the County, tax assessor and tax collector be restrained and enjoined from levying upon or attempting to collect personal property taxes on the vessel and from interfering with the movement of the vessel.

On September 8, 1937, Marian S. Bush filed her cross bill making J. N. Lummus as Tax Assessor of Dade County defendant in which she sought the same relief sought in the answer.

On September 8, 1937, Merrill-Stevens Dry Dock Company filed its answer in which it set out that the only interest it had in the Coronet was claim for charges for services rendered to it but that the assessment of taxes against the

Coronet was unlawful and worked an injury to it because visiting boats would not tie up at its docks on account of the policy of the county officials in attempting to collect on such boats.

On October 1, 1937, Lummus, as Tax Assessor, filed his answer to the cross bill setting out that the Coronet had been continuously in Dade County since the season of 1931-1932 and had been in storage most of the time and that he had assessed taxes against the boat for 1932 and each succeeding year.

On October 4, 1937, Wood, as tax collector, filed his answer to the cross-bill, alleging on information and belief that the Coronet had been in Dade County since the season of 1931-1932 and had been receiving benefits of police protection, fire protection and other governmental protection and alleging that she was not in the port of Miami as a foreign, casual, transient visitor but was kept there for the convenience of her owner.

On issues made, special master was appointed, pursuant to which appointment he took testimony and submitted his report with findings of fact to the chancellor.

The master's report is a long one.

The findings of fact were as follows:

"1. The Yacht Coronet is a twin screw, 800-horse Diesel powered, steel-hulled, cruiser type, ocean-going pleasure craft of approximately 185 feet in length and 25 feet beam, drawing about 15 feet of water. She is of more than 20 tons burden and bears on her stern, her name 'Coronet' and her home port 'New York.'

"2. On the first day of January, 1932, and for several years prior thereto, the Coronet was owned by Irving T. Bush, a resident of the State and County of New York, and was registered in his name, as owner, with the Collector of

the Port of New York on January 1st, 1932, and January 1st, 1933, and January 1st, 1934. However, on January 1st, 1933 and on January 1st, 1934, Marian S. Bush claimed to own the said yacht pursuant to a bill of sale, which was recorded in the home port of the vessel November 3, 1934, so that on January 1st, 1935, and thereafter, the vessel was registered in the name of Marian S. Bush.

"3. The Coronet put into the Port of Miami in the Fall of 1931, and has remained ever since.

"4. From her arrival in Miami until August, 1933, the Coronet was at anchor in the City Yacht Basin in the Miami harbor in Biscayne Bay, and during the month of August, 1933, was removed to the docks of the Merrill-Stevens Dry Dock Company, in the Miami River, just west of the 12th Street Bridge, about two miles from the mouth of the Miami River. Between its mouth and the Merrill-Stevens docks, the Miami River is from 250 to 350 feet wide, about 12 to 15 feet in depth, with several turns or bends, and is spanned by seven draw bridges.

"5. From August, 1933, until the present time, the Coronet has been tied up to the Merrill-Stevens dock, but at all times has had its own crew aboard, and each year has been regularly inspected. The crew has varied in number from two to five and during the time she has been moored at the Merrill-Stevens docks she has been hauled out of the water three times, put on the runways to clean and paint the bottom, to check overboard discharges and for a steamboat inspection, each time she was so hauled requiring her to be out of the water for approximately five days.

"6. It appears from the testimony that when a vessel is stored it is 'dead,' the batteries are taken out, the fuel dumped and the engines killed. However, the Coronet, during the entire time that it was moored at the Merrill-

Stevens dock was in commission and was in such shape that she could have been fueled, provisioned and her crew supplemented so that, within a few days, she could have left her mooring place, proceeded down the Miami River and put to sea under her own power.

"7. The Coronet has not been offered for sale, engaged in commerce either by way of charter, handling of freight or passengers, or engaged in business in any other way since her arrival in the Miami harbor.

"8. She entered the port of Miami as a foreign, transient, casual visitor on a pleasure cruise from her home port of New York, subject to departure from Miami for such destination, domestic or foreign, as the itinerary of her owner might, from time to time, dictate.

"9. At some time after the arrival of the Coronet in the port of Miami, the owner's finances became so involved as to make the operation of a yacht, for the time being, impractical and the owner returned to New York, leaving the Coronet at anchor in the port of Miami. What has happened to her since has been sufficiently stated hereinabove.

"10. In December, 1931, or January, 1932, a Deputy Tax Assessor for the State of Florida and County of Dade observed the Coronet at anchor in the Miami harbor and around about June or July, again saw her at anchor in said port and thereafter and at various times saw her at the Merrill-Stevens dock and, believing that the vessel had acquired a taxable situs in the County of Dade and State of Florida, assessed Irving T. Bush, as owner, for the State and county personal property taxes as follows:

"For personal property taxes for the year 1932, $1,325.01; 1933, $1,515.63; 1934, $1,503.13, and assessed Marion S. Bush as owner for State and county personal property taxes as follows:

"For personal property taxes for the year 1935, $1,594.75; 1936, $1,494.75; 1937, $1,231.50."

The findings of law were as follows:

"1.   That the Yacht Coronet had acquired a taxable situs in the State of Florida for each of the various years for which the State of Florida and County of Dade assessed and levied taxes against her.

"12.   That the defendant and cross-plaintiff, Irving T. Bush, is liable for the personal property taxes assessed and levied against this yacht Coronet for the year 1932, in the amount of $1,325.01, 1933, in the amount $1,515.63, 1934 in the amount of $1,503.13, and the defendant and cross-plaintiff Marian S. Bush, is liable for the personal property taxes levied against the yacht Coronet for the years

1935 in the amount of.................................................$1,594.75
1936 in the amount of..... ........................................ . 1,494.75
1937 in the amount of.................................................. 1,231.50

which taxes constitute a lien upon the said yacht Coronet superior to all other liens.   That the plaintiff, the State of Florida *ex rel.* Dade County, is entitled to a decree against the defendant and cross-plaintiff Irving T. Bush for the said taxes for the years

1932 in the amount of..... ..........................................$1,325.01
1933 in the amount of.................................................. 1,515.63
1934 in the amount of.................................................. 1,503.13

"13.   That the intervenor and cross-defendant Hayes Wood, as Tax Collector for the County of Dade and State of Florida, is entitled to a decree against the defendant and cross-plaintiff Marian S. Bush, for personal property taxes for the years

1935 in the amount of.................................................$1,594.75
1936 in the amount of.................................................. 1,494.75
1937 in the amount of.................................................. 1,231.50

"14. That the aforesaid taxes constitute a lien superior to all other liens upon the yacht Coronet and that the State of Florida *ex rel.* Dade County, and Hayes Wood, as Tax Collector for the State of Florida and Dade County, are entitled to foreclose their respective liens against the said yacht Coronet in this cause."

The master followed the above with the statement, viz.: "After the above styled cause was referred to me and before any proceedings therein were had, I was advised by counsel for the respective parties that this cause was a test case to determine the liability for personal property taxes of pleasure yachts which entered the ports of Florida and remained within the State for periods extending beyond what is locally called 'the season.' I was advised by counsel that both the court which referred the case to me and all of counsel in the case desired, not merely formal statements of my findings of law, but desired that my report contain a thorough discussion of those principles of law which were involved in the case and submitted to me in oral argument lasting a day and a half, and eloborate briefs.

"The above findings of fact are predicated upon undisputed testimony as well as admissions in the pleadings. The findings of law are predicated upon the authorities, arguments and briefs of counsel submitted to me from consideration of all of which I find the following controlling."

The controlling question is whether the yacht Coronet has acquired a taxable situs in the County of Dade and State of Florida. It is contended by the owners:

"1. That under Sec. 4141 of the Revised General Statutes of the United States, Title 46, Sec. 17, 18, 46 and 47 U. S. C. A., a yacht is taxable only at her home port. These sections are as follows:

" 'Sec. 17. Place of registration. Every vessel, not en-

rolled or licensed, shall be registered by the collector of that collection district which includes the port to which such vessel *shall belong* at the time of her registry; which port shall be deemed to be that at or nearest to which the owner, if there be but one, or if more than one, the husband or acting and managing owner of such vessel, usually resides.' (R. S., Sec. 4241.)

" 'Sec. 18. Home ports of vessels of United States. For the purposes of the navigation laws of the United States and of the Ship Mortgage Act, 1920, otherwise known as Sec. 30, of the Merchant Marine Act, 1920, Chap. 25, of this title, every vessel of the United States shall have a 'home port' in the United States, including Alaska, Hawaii and Porto Rico, which port the owner of such vessel subject to the approval of the Commissioner of Navigation of the Department of Commerce, shall specifically fix and determine, and subject to such approval may from time to time change. Such home port shall be shown in the register, enrollment and license, or license of such vessel, which documents, respectively, are referred to as the vassels document. The home port shown in the document of any vessel of the United States in force on February 16, 1925, shall be deemed to have been fixed and determined in accordance with the provisions hereof. The preceding section is amended to conform herewith.' (February 16, 1925, c. 235, Sec. 1, 43 Stat. 947.)

" 'Sec. 46. Names and home ports marked on bow and stern. The name of every documented vessel of the United States shall be marked upon each bow and upon the stern, and the home port shall also be marked upon the stern. These names shall be painted or gilded, or consist of cut or carved or cast Roman letters in light color on a dark ground, or in a dark color on a light ground, secured in place, and

to be distinctly visible. The smallest letters used shall not be less in size than four inches. If any such vessel shall be found without these names being so marked, the owner or owners shall be liable to a penalty of $10.00 for each name omitted.' (R. S. Sec. 4178, February 21, 1891, c. 250, Sec. 1, 26 Stat. 765; January 20, 1897, c. 67 Sec. 1, 29 Stat. 491.)

" 'Sec. 47: 'Port' defined. The word 'port' as used in the preceding section in reference to painting the name and port of every registered or licensed vessel in the stern of such vessel, shall be construed to mean either the port where the vessel is registered or enrolled, or the place in the same district where the vessel was built or where one or more of the owners reside.' (June 26, 1884, c. 121, Sec. 21; 23 Stat. 58.) (See Sec. 264 and 287, Title 46, U. S. C. A. for similar marking of enrolled and licensed vessels.)

"2. That if taxable at any place other than her home port, said yacht would be taxable at the residence of the owner, which, in this case, is the same as the home port, the City, County and State of New York.

"3. That the yacht is not subject to taxation in the County of Dade and State of Florida because it does not 'belong' within said county and State.

"This last contention is predicated upon C. G. L. 909 (707) as follows:

" 'All persons, companies and corporations owning steamboats, dredge boats, sailing vessels, wharf boats, barges and other water craft shall be required to list the same for assessment and taxation in the county in which the same *may belong* or be *enrolled, registered,* or *licensed.*' (Cha. 5596, Acts 1907, Sec. 10.)"

On the other hand, it is contended by the State and county tax authorities that said vessel has actually been

within the County of Dade and State of Florida since the Fall of 1931, and had acquired a taxable status within said State and county for each of said years for which taxes have been assessed and levied.

It should be observed that, in Florida, taxes are levied for the current year, and not for the preceding year; hence, if the yacht was taxable for the year 1932, it is now immaterial whether the taxes were levied and assessed as of January 1, 1932, or as of a subsequent date, also the dates of assessment and levy likewise become immaterial.

The master in his report presented a splendid analysis of the authorities, pro and con, dealing with the principles of law applicable to this and kindred cases. We would present his analysis fully in this opinion were it not for the fact that to do so would result in consuming many pages which a majority of the Court feel is not warranted.

We have not been cited to, nor have we been able to find a case directly in point. In every reported case which we have been able to find involving the situs for taxation of vessels, the vessel involved was in some way connected with or engaged in interstate or intra-state commerce; that is, was engaged in the business of transportation, while in the instant case the vessel involved, so far as the record shows, has never been engaged in the business of transportation, either foreign or domestic, interstate or intra-state.

It is contended by counsel for the property owners that the case of Johnson v. DeBary-Baya Merchants Line, 37 Fla. 499, 19 Sou. 640, is conclusive of the instant case. We cannot agree with this contention. The facts in this case and the DeBaya case are entirely different and the pleadings are different. In the DeBary-Baya case the vessels involved were engaged in the carriage of interstate commerce. Only one of such vessels had been within the

State continuously for the period of one year. The Yacht Coronet has been at anchor or tied up in a dock in Dade County, Florida, for the past seven years and more, and at most she has been moved only once during that time under her own power, that being from the City dock or basin to the Merrill-Stevens Dry Dock. During these years she has not been engaged in carrying anything anywhere. In the DeBary-Baya case the opinion was largely based upon the hypothesis that the decision of the Supreme Court of the United States prohibited the taxing of a vessel by other than the taxing authority of her home port of a vessel actually engaged in interstate commerce. Since the decision of the DeBary-Baya case the Supreme Court of the United States has rendered the opinion in the case of Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 49 L. Ed. 1059, 25 Sup. Ct. Report 686, where it was expressly held that even though a vessel be engaged in interstate commerce exclusively within the waters of a single state, she there acquires a taxable situs and is taxable by the State in which she plies.

In the DeBary-Baya case it was alleged in the bill, and not denied in the answer, that the vessel sought to be taxed *had not* acquired a taxable situs in Duval County or the State of Florida and because of the undenied allegation the Court deemed it to be an admitted fact that the vessel had not acquired such taxable situs in this State.

In the instant case the material point at issue is whether or not the yacht Coronet has acquired a taxable situs within this State. Her actual situs here is admitted, which leaves the principal question for decision one of law as to whether such actual situs within the County of Dade and State of Florida is such situs as empowers the State of Florida and County of Dade to tax her.

There is nothing in the Constitution or laws of the United States which prevents a State from taxing personal property, even when employed in interstate commerce or foreign commerce, like other personal property within its jurisdiction. See Pullman Palace Car Co. v. Pa., 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613. Florida has the power to tax the Yacht Coronet, unless it is prohibited from taxing the vessel by some superior to its own. It is well established, as was said in National Dredging Co. v. State, 99 Ala. 462, 12 Sou. 720.

"There is nothing in the nature of this said property to take it out of the general principle. The fact that it is floating property and may be moved from place to place and port to port by water, furnishes no more reason for exempting it from taxation here than would exist for the exemption of property which did not float, and could be moved from place to place only over land."

In summing up this question, the master said, and we approve:

"Whether the yacht was actually taxed in New York during the years she has been taxed by the State of Florida is not important. She was liable to taxation there. Morgan v. Parham, 16 Wall. 472, 21 L. Ed. 303; Johnson v. De-Bary-Baya Merchants Line, 37 Fla. 499, 19 So. 640; People v. Commissioners of Taxes, etc., for the City and County of New York, 58 N. Y. 242; Minturn v. Hays, 2 Cal. 590; Yost v. Lake Erie Transportation Co., 112 Fed. 746; Olson v. City and County of San Francisco, 148 Cal. 80; 82 Pac. 850.

"It is also immaterial that the levying of taxes against the vessel by the State of Florida may result in double taxation, that is, taxation both by the State of New York and the State of Florida. Minturn v. Hayes, 2 Cal. 590; Trammell

v. Connor, 91 Ala. 398, 8 So. 495; Northwestern Lumber Co. v. Chehalis County, 25 Wash. 95, 54 L. R. A. 212, 87 Am. St. Rep. 747, 64 Pac. 909; Olson v. San Francisco, 148 Cal. 80, 82 Pac. 850.

"Paraphrasing the statement of the Supreme Court of the United States in the Pullman Palace Car Co. v. Pennsylvania, *supra,* 'only so far as the comity of the State of Florida allows, can such property be affected by the law of New York.'

"It is unquestioned law that where a vessel is engaged in the actual carrying commerce between a port of one State and a port or ports of another or foreign ports, as to each of the ports so visited by her, she is considered as being in transit, and does not acquire a taxable situs at any of the ports visited. In such cases an arbitrary or legal situs is assigned to her, and where her home port and the residence of her owner is the same, she is taxable only at such home port. Hays v. Pacific Mail Steamship Co., 17 How. 596, 15 L. Ed. 254; Morgan v. Parham, 16 Wall. 471, 21 L. Ed. 303; Johnson, Collector, v. DeBary-Baya Merchants Line, 37 Fla. 499, 19 So. 640; People v. Commissioners of Taxes, etc., for the City and County of New York, 58 N. Y. 242; Yost v. Lake Erie Transportation Co., 112 Fed. 746; Olson v. San Francisco, 148 Cal. 80, 82 Pac. 850; Pullman Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613.

"But where the residence of the owner is different from the home port, a vessel engaged in carrying commerce between a port of one State and a port or ports of another or foreign ports, is taxable at the residence of the owner. St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 L. Ed. 102; Ayer & Lord Tie Co. v. Kentucky, 202 U. S. 409, 50 L. Ed. 1082, 26 Sup. Ct. 679; Southern Pacific v.

Kentucky, 222 U. S. 63, 56 L. Ed. 96, 32 Sup. Ct. 13; Tacoma Oriental Steamship Co. v. Tallant, 51 Fed. (2d) 359.

"It is the inability of vessels actually engaged in carriage of passengers, freight and mail between a port of one State and the port or ports of other States or foreign countries to acquire an actual situs, that has caused the adoption of the rule taxing her at her home port or her owner's domicile.

"But even in these opinions which most vigorously deny the right of a State to tax a nonresident vessel which merely visits its ports for the purpose of interstate and foreign commerce, it is clearly recognized that such vessel may acquire an actual situs other than her home port or the residence of her owner.  Morgan v. Perham, 16 Wall. 471, 21 L. Ed. 303; Johnson v. DeBary-Baya Merchants Line, 37 Fla. 499, 19 So. 640; Yost v. Lake Erie Transportation Co. 112 Fed. 476; St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 L. Ed. 192.

"Where vessels have acquired an actual situs within a state other than that of her home port or her owner's residence, the taxing power has been upheld.  Old Dominion Steamship Co. v. Virginia, 198 U. S. 299, 49 L. Ed. 1059, 25 Sup. Ct. Rep. 686; Minturn v. Hays, 2 Cal. 590; National Dredging Co. v. State, 99 Ala. 462, 12 So. 720; N. American Dredging Co. v. Taylor, 56 Wash. 565, 106 Pac. 162, 29 L. R. A. (N. S.) 105.

"Counsel for the yacht owners argue that this case is controlled by Yost v. Lake Erie Transportation Co., *supra,* because in the Yost case the vessels were tied up at Toledo during the winter because of the frozen condition of Lake Erie.  Counsel then contends that, in the instant case, the freezing of the owner's finances should be held to have a like effect.  In the Yost case, the vessels remained in the

Port of Toledo because of freezing weather and did not thus lose their status as being actually engaged in commerce or in transit. So, he contends in the instant case, the yacht Coronet should not lose her status as being actually engaged in commerce or in transit because she was compelled to remain in the port of Miami because of frozen finances. This position is not sound because the liability of the vessel for taxation cannot depend upon the condition of the owner's finances.

"With more logic, counsel for the owners contend that, if not taxable solely at her home port, the vessel is taxable only at the domicile of her owner (which, in this instance, is the same as her home port), relying on the authority of Hunt v. Turner, 54 Fla. 654, 45 So. 509; and Boyd v. City of Selma, 96 Ala. 144, 11 So. 393.

"In *Hunt v. Turner, 54 Fla. 654, 45 So. 509,* the owner of intangible personal property, consisting of money on deposit in foreign States and countries, was held taxable at the domicile of the owner.

"In *Boyd v. City of Selma, 96 Ala. 144, 11 So. 393,* intangible personal property in the form of debts was held taxable at the domicile of the creditor instead of the domicile of the debtor. In its opinion, the Court quotes from Desty on Taxation (Volume 1, p. 326):

" 'The situs of invisible and intangible property, not growing out of real estate, is with the owner. If, for the purpose of taxation, it be assigned a situs, it should be at the place where it is owned, not the place where it is owed. —The debt then having its situs at the creditor's domicile, both he and it are, for the purposes of taxation, within the jurisdiction of the taxing power.

" 'He recognizes, however, exceptions both as to visible tangible property, and as to invisible, intangible property;

the exceptions as to the former being such as in the case of Trammell v. Connor, *supra.* * * *' "

It is contended by the owners that the yacht Coronet does not "belong" to the State of Florida and County of Dade; that the yacht was not enrolled, registered or licensed in said County and State. The contention is based on Section 707 R. G. S., 909 C. G. L. We cannot agree with this contention because Section 696, R. G. S., 896 C. G. L., *inter alia,* provides:

"The terms 'personal property' and 'personal estate' as used in this Chapter, shall have the same meaning and shall, for the purpose of taxation, be construed to include all goods and chattels, moneys and effects, all boats and vessels, all debts due or to become due from solvent debtors, whether on account, contract, note or otherwise, all public stocks or shares in all incorporated or unincorporated companies."

So it is that if the yacht has an actual situs in Dade County, Florida, and we hold that she has, she is liable to personal property tax in this State and county and was properly assessed in said State and county.

For the reasons stated, the decree appealed from is affirmed.

So ordered.

Affirmed.

TERRELL, C. J., and WHITFIELD, J., concur.

THOMAS, J., agrees to conclusion.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.