[Civ. No. 3952.   Fourth Dist.   Sept. 2, 1949.]

SHIPS AND POWER EQUIPMENT CORPORATION (a Corporation), Appellant, v. COUNTY OF SAN DIEGO, Respondent.

Charles B. DeLong for Appellant.

James Don Keller, District Attorney, Robert G. Berrey, Deputy District Attorney, and Carroll H. Smith, Chief Trial Deputy, for Respondent.

BARNARD, P. J.—This action involves the validity of a personal property tax levied for the year 1947-48 upon cer-

tain ships moored in San Diego harbor. The plaintiff paid the tax under protest and brought this action to recover the amount paid.

The cause was heard upon an agreed statement of facts. The plaintiff is a New Jersey corporation, and none of its officers reside in California. On December 4, 1946, it purchased from the United States Navy 33 seagoing vessels, being L. C. I. landing craft constructed for Navy use in transporting infantry troops in assault landings. On January 16, 1947, it purchased from the Navy a seagoing P. C. vessel constructed for use in patroling the seas. On February 15, 1947, it purchased from the Navy two L. S. M. landing craft, constructed for use in transporting troops and equipment in assault landings. All of these vessels had been thus used by the Navy during World War II. Each of said vessels was over 50 tons net burden, but none of them had ever been registered at any port in this state or engaged in the transporting of freight or passengers, or engaged in trade or commerce. None of them had at any time been registered or documented or enrolled, or licensed, or awarded a number by the United States or by any other country or jurisdiction.

The dates when these vessels were decommissioned do not appear, but they had all been decommissioned at San Diego harbor on or prior to March 25, 1946. They remained moored in that harbor at least until July 6, 1948, the date of the stipulation. During said time they were capable of being recommissioned and of operating on the high seas.

On March 3, 1947, the county assessor assessed a tax of $2,486.02 upon said vessels, which the plaintiff paid under protest and under a threat that otherwise the vessels would be seized and sold. None of said vessels had been assessed or taxed in New Jersey, or in any other state or jurisdiction. The vessels are still owned by the plaintiff and have not been sold or otherwise disposed of.

It was further stipulated that the president of plaintiff corporation, if called as a witness, would testify: "At the times of the purchase of said vessels and each of them, it was the intention of plaintiff to operate or cause to be operated as seagoing vessels upon the Yangtse River in China, but because of the inflation in that country have not done so." Also that on October 14, 1947, an authorized agent of the plaintiff wrote to a man in San Diego offering to sell to him "all of the L. C. I.'s in San Diego" at a price of $7,500 each, or at a price of $6,200 each if all were taken at one time.

From these facts the court made the further finding that on March 3, 1947, the stay and location of said vessels and each of them in San Diego harbor ''was permanent, though indefinite, as distinguished from a temporary stay or location; that on said date said 36 vessels, and each of them, had become commingled with and a part of the general mass and bulk of personal property in the State of California and the county of San Diego; and that on said date said 36 vessels, and each of them, had acquired an actual permanent situs in said county of San Diego though indefinite, as distinguished from a temporary situs.'' The court found as conclusions of law that these vessels were subject to taxation by the defendant, that this tax was lawfully assessed and levied, and that the plaintiff is not entitled to recover the amount paid, or any part thereof. Judgment was entered accordingly, and this appeal followed.

The appellant contends that being seagoing vessels owned by a foreign corporation the tax situs of these ships was in the home state of the corporation. In support of this it is pointed out that section 1138 of the Revenue and Taxation Code provides that ''Vessels documented outside of this State and plying in whole or in part in its waters, the owners of which reside in this State, shall be assessed in this State.'' It is argued that the converse of this must also be true, and that the effect of this statute is that where the owners do not reside in this state the vessels may not be taxed here. Neither the rule expressed in the statute nor its converse should have any application here since these vessels were not documented outside of this state and were not plying, in whole or in part, in the waters of this state. It is further contended that the court's conclusion that the vessels had attained a permanent situs in this state is not justified by law or the facts; that the vessels had no home port or situs and were not subject to taxation during the time they were owned by the United States government; and that their situs for tax and all other purposes was immediately fixed in New Jersey the moment they were sold to the plaintiff. Also, that a permanent situs, as distinguished from a temporary situs, could in no event be established in any period short of a full tax year.

Section 1 of article XIII of the state Constitution requires that ''All property in the State except as otherwise in this Constitution provided, not exempt under the laws of the United States, shall be taxed in proportion to its value.'' Section 4 of that article provides such an exception for any vessel

of 50 tons burden which is "registered at any port in this State and engaged in the transportation of freight or passengers." It clearly appears that this exemption has no application here. These vessels were not thus registered, were never engaged in any such transportation, and were not constructed for such a purpose.

The facts of this case would seem to bring it within the general rule that tangible personal property is taxable at its actual situs, rather than within the special rules that have been developed with respect to the taxation of vessels which are engaged in foreign or interstate commerce, as a necessary result of which they cannot be said to have an actual permanent situs. The true test of whether a vessel is thus engaged in the transportation of freight or passengers is whether such vessel is regularly used for that purpose. (*County of Los Angeles* v. *Craig,* 38 Cal.App.2d 58 [100 P.2d 818].) While a mere temporary withdrawal from such use would not affect the standing of a vessel so regularly used, it would hardly seem reasonable to apply the special rule to a vessel which was not built for such use and had never been so used, regularly or otherwise, even though the owner may have at one time intended to put the vessel to such use in a foreign country at some indefinite time in the future.

These vessels had never been used in trade or commerce and were entirely inoperative from some time prior to March 25, 1946, the exact date not having been brought out by the appellant, at least up to July 6, 1948, when the agreed statement of facts was signed. During this entire period they were moored in San Diego harbor and not used for any purpose. The stipulated testimony with respect to appellant's intention at the time of purchase is qualified, the expressed intention being to either operate them or "cause to be operated" in China. There is no evidence of the kind of use thus contemplated, whether for war or for commerce. It is a reasonable inference from this indefinite evidence, and from the further evidence of an offer of sale, that these vessels were purchased as merchandise and with the intention of selling them to the best advantage.

■ For taxation purposes, a vessel that is completely inoperative is no different than any other tangible personal property which is movable on land or water. (*Tennant* v. *State Board of Taxes and Assessments,* 95 N.J.L. 465 [113 A. 254]; *Thompson* v. *Day,* 143 La. 1086 [79 So. 870].) ■ Even

under the special rules governing vessels used in trade and commerce a vessel may acquire a tax situs at a place other than that of the domicile of the owner. (*Olson* v. *San Francisco,* 148 Cal. 80 [82 P. 850, 113 Am.St.Rep. 191, 7 Ann. Cas. 443, 2 L.R.A. N. S. 197] ; *Bush* v. *State of Florida,* 140 Fla. 277 [191 So. 515] ; *North American Dredging Co* v. *Taylor,* 56 Wash. 565 [106 P. 162] ; *Sayles* v. *County of Los Angeles,* 59 Cal.App.2d 295 [138 P.2d 768].)

▮▮▮▮ The trial court's finding that these vessels had acquired a tax situs in San Diego county is sufficiently supported by the agreed facts  The fact that the federal government owned these vessels prior to the time they were sold to the appellant is not material on this question. While the federal government, during its ownership, was exempt from any local taxation, the special rules governing the use of vessels in trade and commerce involve, for taxation purposes, the question of permanent or temporary situs of the vessel itself. This question of situs depends upon the place or manner in which the vessel is used and not upon the owner's situation with respect to general tax liability. This entire matter of situs, for taxation purposes, merely constitutes an exception to the other special rule which for convenience regards the home of the owner of a ship used in commerce, as the proper place for taxation. It clearly appears that these vessels had never been engaged in commerce and that they remained inoperative during the entire tax year in question. From the nature of the proof offered it seems probable that all or most of them had been in this situation for more than a year prior to March 3, 1947, when this tax was assessed.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 31, 1949.